# CITY OF ST. LOUIS, Plaintiff in Error, v. GUS BENDER.

### Division One, February 28, 1913.

1. **PROSECUTION: To Recover Penalty: Right of State to Writ of Error.** When the city loses in a prosecution to recover a penalty for the violation of an ordinance, the case is considered civil or *quasi*-civil, and the courts have uniformly entertained an appeal by the city, and if the proceedings can be reviewed on appeal there seems to be no good reason why they cannot be reviewed upon a writ of error sworn out by the city.

2. **APPRENTICE: What' Is: Plumbers: Police Regulation.** An apprentice is not only a boy articled by his father or guardian to a tradesman for a fixed term, but a man of mature years who by a contract of his own places himself under the instruction and supervision of a tradesman with the view to learn the art or trade in which his master is engaged, and who in good faith tries to carry out that contract. Where the ordinance prohibits any person, except apprentices working for licensed plumbers, from engaging in the business of plumbing, without having been duly licensed, a man who, thirty-two years of age, was working, under a letter of apprenticeship, for a licensed plumber, who designated the particular work he was doing and instructed him how to do it, was an apprentice, and not liable to the penalties of said ordinance.

    *Held,* by LAMM, J., concurring, that such an ordinance could not be sustained as an exercise of the police power on the theory of an attempt to monopolize into the hands of a few a gainful trade so that there could be no learners except the restricted few who were bound under indentures in their youth; but by giving the word "apprentice" its usual and reasonable construction of a *learner*, regardless of his age and regardless of the technical features of his being bound out to a master by indenture, who serves an apprenticeship under a master with the view of finally becoming a master in the craft himself, the ordinance is valid.

Appeal from St. Louis Court of Criminal Correction.—
*Hon. Wilson A. Taylor,* Judge.

AFFIRMED.

*Lambert E. Walther* and *G. B. Arnold* for plaintiff in error.

(1) Defendant was not an apprentice, within the meaning of that term as used in the ordinance, because he was not a minor, bound by indentures for a fixed time, to learn from his master the trade of plumbing. Sèc. 1679, R. S. 1909; 2 Kent, 211; 1 Bouvier, 159; 1 Blackstone, 526. (2) The construction of an ordinance is for the court. Barton v. Odessa, 109 Mo. App. 82. (3) The general rules for the construction of statutes apply with equal force to the construction of ordinances. Holman v. City of Macon, 155 Mo. App. 398. (4) This is so because an ordinance or by-law (within the charter powers of the city) is in actual effect a local law of the State itself. Ex parte Smith, 231 Mo. 123; State ex rel. v. Railroad, 151 Mo. 188. (5) ''Where a statute uses a word which is well known and has a definite sense at common law or in the written law, without defining it, it will be presumed to be used in that sense and will be so construed, unless it clearly appears that it was not so intended. 'Words having a precise and well-settled meaning in the jurisprudence of a country are to be understood in the same sense when used in statutes, unless a different meaning is unmistakably intended.' '' 2 Lewis' Sutherland Statutory Construction, p. 757. (6) The word apprentice is a technical word, ''having a peculiar and appropriate meaning in law,'' and ''shall be understood according to its technical import,'' ''unless such construction be plainly repugnant to the intent of the Legislature, or of the context of the same statute.'' Clarkson v. Hatton, 143 Mo. 47; Sec. 8057, R. S. 1909; 2 Lewis' Sutherland Statutory Construction, p. 755.

*T. J. Rowe, Thomas J. Rowe, Jr.,* and *Henry Rowe* for defendant in error.

(1) After the rendition of the judgment of not guilty, and the discharge of the defendant in error, he

was no longer in said court. It has been adjudicated by this court that a writ of error is a new action. Macklin v. Allenberg, 100 Mo. 343. (2) Any act of a city official which is not authorized or warranted by the charter and ordinances of the city, is null and void. 17 Ency. Pl. and Pr. 145. For the reason that the suing out of the writ of error herein was not warranted or authorized by either the charter or ordinances of the city of St. Louis, the writ of error should be dismissed.

GRAVES, J.—This cause had its origin in the police court in and for the city of St. Louis, by information as follows:

*To the Police Justice of the Second District Police Court of the City of St. Louis, Missouri, March 20, 1908.*

State of Missouri,  } ss.
City of St. Louis.  }

City of St. Louis, March 19, A. D. 1908.
Gus Bender.
          To The City of St. Louis, Dr.
     To one hundred dollars for the violation of an ordinance of said city, being Ordinance No. 23007, Chapter —, Article —, Section 10.
     Approved April 1, 1907.
     In This, To-wit: In the city of St. Louis, and State of Missouri, on the 19th day of March, 1908, the said Gus Bender did then and there engage in and work at the business of plumbing as journeyman plumber without having secured a certificate of qualification or license as required to do, and not being an apprentice, to-wit, at and in the building, No. 3207 Cass avenue, contrary to the ordinance in such cases made and provided.        E. P. CREECY,
                    Chief of Police of the City of St. Louis.

     In the police court the defendant was convicted and fined $100. From that judgment he appealed to St. Louis Court of Criminal Correction. In the Court of Criminal Correction the record discloses that defendant interposed a demurrer to the complaint, thus stated:

     "Now at this day comes defendant and demurs to the information herein for reasons following:

"First.   The information fails to allege facts sufficient to constitute an offense.

"Second.   The information fails to allege facts sufficient to show a violation of ordinance number 23007, section 10, approved April 1, 1907, of the city of St. Louis.

"Third.   Ordinance number 23007, section 10, of the city of St. Louis, upon which the information herein is bottomed, is unconstitutional and void.

"Fourth.   Because said ordinance is in violation of section 30, article 2, of the Constitution of Missouri.

"Fifth.   Because said ordinance is in violation of section 1 of the Fourteenth Amendment to the Constitution of the United States.

"Sixth.   Because under the charter of the city of St. Louis the Municipal Assembly has no power or authority to pass said ordinance."

This the court overruled, and thereafter on the same day a trial by jury was waived and the cause tried out upon the facts by the court, who at the end of the trial, after some days' consideration of the law and facts, entered a judgment discharging the defendant.

From this judgment the city of St. Louis sued out its writ of error here, and the proceedings of that court under the writ of error is the case now here. Further facts and the points made will be noted in the course of the opinion.

I.   Question is raised as to the right of the city to sue out this writ of error.   In view of the facts involved in this record we have concluded **Writ of Error by State.** not to go into the field of authorities, a discussion of which would be necessary, and many of which are not cited in respondent's brief.   Such a discussion would involve a review of our cases on the character of a suit to recover a penalty for the violation of our city and town ordinances.   We have differently defined the suit as civil or *quasi*-civil.

We have applied in a way the criminal procedure to such actions, but we have always entertained an appeal by the city where the defendant was discharged of liability. When a defendant is acquitted in a criminal case upon a trial either before court or jury (as in a misdemeanor he could be so tried by court, if he waived a jury), we have looked upon such acquittal as the end of the case. The State in such case is debarred of an appeal. But as stated above when the municipality loses in one of these city actions to recover a penalty, the courts of Missouri have always entertained such an appeal. If the case is such as could be reviewed upon appeal we can see no good reason for saying that it could not be reviewed upon a writ of error. In view of our conclusions upon the remainder of this record, we shall not delve into further case law, but proceed upon the theory of the case being properly here. .

II.   The real crux of this case is whether or not the court properly acquitted and discharged the defendant under the evidence. The charges we have fully set out. The city relies upon section 10 of ordinance number 23007, which section reads:

Apprentice. Definition.

"Any person, firm or corporation or the agent or officer for any such person, firm or corporation, who shall engage in or work at the business of plumbing in the city of St. Louis, except apprentices working for duly licensed plumbers, without first having been duly licensed as required by the provisions of this ordinance, shall be deemed guilty of a misdemeanor, and, upon conviction thereof, shall be fined not less than ten dollars nor more than one hundred dollars for each offense."

It will be noticed that this ordinance excepts "apprentices," and the meaning of this term as it appears here, and as of course it must be determined from the whole body of the act, is one of the questions in the

case. This defendant was tried upon the facts and found not guilty. The city contends that the word "apprentices" as used in the act has an exceedingly technical meaning and only applies to boys, duly "articled" to some mechanic and could not apply to this defendant, who, as we take it, is a man of mature years (32 years) trying to learn the business of plumbing. According to the evidence he had tried to pass the examination for the position of "journeyman plumber," but failed. After such failure he applied to Mr. Hobein, who we take it was a licensed plumber, because such fact is not denied in the briefs or record, and there is some evidence tending to show that he had given to defendant "a letter of apprenticeship." One side of the case is thus described by the defendant, Gus Bender:

"Direct Examination, by Mr. Rowe:

"Q. What is your name? A. Gus Bender.

"Q. How old are you? A. Thirty-two.

"Q. Were you working at this on the 19th day of March at the building 3207 Cass avenue? A. Yes, sir.

"Q. Now state what you were doing there. A. I was getting the soil pipe ready; that is, Mr. Hobein just had taken me there to give me the instructions what I should do—

"Mr. Arnold: Well, I object to that.

"A. ——— and just as he left these fellows came in—

"Mr. Arnold: Hold on there. Just a minute now.

"By the Court (Q.): What instructions did he give you? A. To run pipe. How I should run the iron pipe up—soil pipe. When I hired myself out to Mr. Hobein he asked me if I was a plumber. I told him no, I failed to pass the examination, but he seen I had to have some ex-

perience and from instructions I could go on with the work. I showed him who I worked for before he said all right, and every day he came to look at my work. I served under his instructions and was working at the soil pipe about fifteen minutes when these fellows came in. They asked me if I was a plumber. I said yes, I am doing plumbing work here and serving an apprentice under instructions, and one, this fellow here, he got the policeman, and when the policeman came to me I showed him a letter Mr. Hobein had written to me to show I was working as an apprentice. The letter didn't do any good. He took me to the police station anyhow.

"Q. How long had you worked at the plumbing trade? A. I worked at the plumbing trade about a year on the outside.

"Q. Now, what actual plumbing work did you do on this building, 3207 Cass avenue? What was it that you actually did in the way of plumbing work? A. I just had cut one length of pipe, that's all I had done when these fellows came in.

"Q. Had you made any connections of any kind? A. No, not there.

"Q. And you had done no plumbing work at all there, had you? A. Not right then, I just had got started.

"Mr. Arnold: That calls for a conclusion, of course.

"Mr. Rowe: Well, I am asking him what plumbing work he had done there, that's what the court wants to know. What plumbing work there, if any, had you done in that building? A. Just had cut one length of pipe and started the furnace. That's all I had done.

"Q. Now are you learning the trade of plumbing? A. Yes, sir, I am learning it.

"Q. And who are you working under? A. I am working under Mr. Flagg, under instructions right now.

"Q. And that was all the work that you did on this occasion, was it? A. Yes, sir."

His cross-examination does not shake this portion.

By the record the city undertook to have experts to testify that an apprentice meant an "articled boy" under the age of twenty-one, or rather from fifteen to sixteen years of age, and that as such he could not do the work which defendant was then doing. It should be said that the proof is not very pointed for the city upon this point, and it relies now more upon what is called a technical definition of "apprentice" than upon this testimony. That the city did not seriously question that Hobein was a licensed plumber is apparent from the manner in which the case was tried. It was tried upon the theory that such fact was not really material, and the argument in this court for the city was to a similar effect. The position of the city is further emphasized in their brief in this language:

"The judgment of the lower court should be reversed and the case remanded because, after plaintiff had shown and the defendant had admitted that he was doing plumbing work, at the time and place of his arrest, defendant wholly failed, in fact made no attempt, to prove that his alleged employer, for whom he said he was working as an apprentice, was a licensed plumber. However, as this will be considered a test case and of great importance to the people of St. Louis generally, and especially those engaged in the plumbing business and the city authorities having in charge the enforcement of municipal regulations, we respectfully urge the court to give its construction of the word apprentice and the phrase in which that word is used, so that all may know what that word and phrase mean. In other words, we wish the court to define who is an

apprentice within the meaning of the ordinance and the character of plumbing work he is authorized to perform.''

Whilst the city in the paragraph just quoted in a way seems to suggest that the defendant had not made proof of of his employer's license, yet it is apparent that such was not the theory below, and we have no doubt that, in addition to the evidence in the record tending to show that Hobein was a licensed plumber a reversal of the case for that purpose alone would only result in such a showing; we are, therefore, inclined to proceed with this case upon the idea that such a license was shown by the license itself. So much ·is indicated by the brief of plaintiff in error. Plaintiff in error knowing the record does not seek to stand upon the question under the proof, but seeks to have us go to the legal question. This we will do. Now to state this legal question it might be well to shorten up a little. Verbosity is to be avoided even in court opinions. In the process of shortening the proposition, we can well state it thus: The ordinance in question excepts apprentices. Defendant, although thirty-two years of age, was working under a licensed plumber, with a letter of apprenticeship to that effect. Defendant so testified as to his authority to work and the trial court had the right to believe his testimony and discharge him from the charge. If error was committed at all it was the meaning which the trial court gave to the word ''apprentices'' in this ordinance. If he properly construed the ordinance in holding that the defendant fell within that term, then there was ample evidence authorizing his discharge. Defendant testified that he was working under Hobein and that Hobein had designated the particular work he was doing upon the occasion of his arrest. In other words, there is ample evidence in the record for the trial court to find that defendant was an apprentice of Hobein, if a man of his age and circumstanced as was

the defendant, could be an apprentice under the law. This occurs to me to be the sole question.

At the early common law the word apprentice had a specific meaning. It no doubt referred to minors who could be "bound" or "articled" to some mechanic, versed in his trade, there to receive instructions and to work under the supervision of such mechanic until he could do all work in that trade, from the lowest to the highest. The law did not preclude the apprentice from actually doing all grades of work, but it did contemplate that he would do it under the supervision of his "tutor," the man to whom he had been bound for the usual term. Nor can it be seriously questioned that at these early days the apprentice was presumed to be a boy of such age that the term of his apprenticeship would terminate about the time of his majority. Case law of this kind is at hand and the brief of the city is not without such authority.

But the question here is not what the term "apprentice" formerly meant, but what it means now, and meant at the time the ordinance in question was adopted. We concede to the city the old time definition of "apprentice," but is that the present meaning of the term? In other words, in modern law was it ever contemplated that men over the age of twenty-one could not learn a trade by becoming an apprentice to one who knew the trade? We should be slow in holding that only boys can become apprentices. We should not bar the open field of the "trades" from all men; if they proceed to enter them within the spirit of the law. What has been law may not be law now. Under the old law boys were bound out to tradesmen for a term of years on conditions and terms fixed largely by the customs of the community. When these boys had served the term and received in person, or through the parent who "articled" them, the pittance due, they were presumed to know the intricacies of the trade. But in learning these intricacies even the boys had

to do the actual work under the supervision of the master. In that age of the law there would have been no objection to the boy doing the actual physical work for the purpose of the education, provided that work was directed and supervised by the master. But the age of boys as the only "apprentices" has passed. The word has a general accepted meaning in these days. Such meaning goes further than that of a boy "articled" by his father or guardian to a tradesman for a fixed term. As now used it not only includes this class, but likewise that class of more aged persons who by contract of their own, place themselves within the relationship. Going to the brief of plaintiff in error, we find quoted the definition of "apprentice" from Webster's Standard Dictionary, thus: "One who is bound by indentures or by legal agreement to serve a mechanic, or other person, for a certain time, with a view to learn the art or trade in which his master is bound to instruct him." Note the phrase "or by legal agreement to serve a mechanic." The evidence in this case tends to show that there was such legal agreement between defendant and Hobein, and this does not seem to be seriously controverted by the city. To be explicit the more modern idea is that the word "apprentice" includes not only those minors, who by and through their parents or other legal authorities, have been bound out for a fixed period to learn a trade, but in addition thereto also includes those persons who have attained their majority, and who for themselves have, by contract assumed a like relation. The evidence before the court below tended to show that Bender, although an adult of thirty-two years, had attempted to create the relation of apprentice by contract. The city, rather than to specifically deny that fact, prefers to ask our adjudication upon the naked question as to the meaning of the term. This adjudication we are willing to give. We will not hold that the term "apprentice" must be limited in this age of progress

St. Louis v. Bender.

to a mere boy bound by legal authority to a tradesman. We do hold that the term includes such class (if in fact such is now done), but that it likewise includes all persons, irrespective of age, who by contract place themselves in position to learn a trade and are in a bona-fide manner carrying out that contract.

We therefore conclude that in the case at bar the St. Louis Court of Criminal Correction had ample evidence in the record upon which to base the judgment of acquittal which was entered. In this state of the record, the judgment should be affirmed, and this too without reference to the intricate questions (if they be intricate) raised by the demurrer. Let the judgment be affirmed. All concur. *Lamm, J.,* in separate opinion in which *Woodson, P. J.,* concurs.

## CONCURRING OPINION.

LAMM. J.—The word ''apprentice'' comes from *apprendre,* meaning *to learn.* Accordingly in one allowable, ordinary meaning, ''apprentice'' is used to convey the idea of a learner of a trade, or, it may be, a learner in any department; one only slightly versed in a subject; a novice. [Cent. Dict., Tit. ''Apprentice.'']

Apprentice: Definition.

Its technical definition is: One who is bound by indenture to a master for a specified time to learn the art or mystery of some trade, craft, profession or business in which his master is bound to instruct him. Even husbandry or housewifery might be such business.

The question is: Should we give the word ''apprentice'' in the ordinance the elastic breadth of its usual and ordinary meaning in common conversation or give it the rigidity of its strict technical meaning?

Youth being the usual season of learning, the idea of an apprenticeship often carries with it a tang or suggestion of youth, but not necessarily so even in the

St. Louis v. Bender.

strict and technical meaning of the word. For example, Bouvier (Bouv. L. Dict., Tit. "Apprentice") says nothing about youth in his definition. He speaks of an apprentice as "a person" bound in the form of law to a master, to learn from him his art, trade or business and to serve him during the time of his apprenticeship. Black (L. Dict., Tit. "Apprentice") de-

The Statute. fines him as a "person, *usually* a minor." bound in due form of law, etc. Our statutes on apprentices furnish little help in giving a meaning to the word in general use. They relate to pauper and orphan children, who are bound out as apprentices under strict forms of law by the highly technical instruments known as indentures. Clearly the ordinance in question does not use the word in the narrow statutory sense above, viz., orphan and pauper children bound out to a master for a term.

In an interesting case in Florida the court had in judgment (State ex rel. v. Jones, 16 Fla. 306) the meaning of the term "a regular apprenticeship." In that case, on a consideration of English cases and on the reason of the thing, it was held that an apprenticeship did not necessarily import a contract by way of indenture. The same distinction was drawn in North Brunswick Township v. Franklin Township, 16 N. J. L. 535.

The ordinance in question can only be sustained as an exercise of the police power for the welfare of the public. It could not be sustained on the theory there was an attempt to monopolize into

Police Regulation. the hands of a few the gainful trade or craft of plumbing, so that there can be no learners in the craft except the restricted few who might be bound under indentures in their youth. For these reasons we must give to the word "apprentice" the reasonable and usual construction of a *learner,* regardless of his age and regardless of the technical features of his being bound out to a master by an in-

denture. This permissible view of it permits any man to finally become a master plumber at any age, so long as he serves an apprenticeship as a learner in acquiring the art or mystery of the craft of plumbing, and sustains an ordinance that would otherwise be void as an unconstitutional exercise of the police power.

The mere fact that defendant's employer was not present *in propria persona* at the time of defendant's arrest when about to cut a pipe into lengths, and that he had given directions which defendant was carrying out when left to himself for a spell, is of no significance. May not a master lay out an apprentice's work on the trestle board? Even under the strictest view of it an apprentice need not perform every stroke of his labor as a learner under the constant eye of the master, so long as the superior skill of the master appears in the work through his directions and instructions given to the apprentice. Otherwise (all theory and no practice) no apprentice would ever develop into a journeyman or master of the craft.

*Absence of Master.*

For the reasons stated by my brother and these additional ones I vote to concur. *Woodson, P. J.,* concurs in these views.