CHARLES ERNEST RYLES, JR., PLAINTIFF. v. DURHAM COUNTY HOSPITAL CORPORATION, INC., TRADING AS DURHAM COUNTY GENERAL HOSPITAL, DEFENDANT

No. 9114SC382

(Filed 15 September 1992)

**Master and Servant § 49.1 (NCI3d) — workers' compensation — apprentice employee — tort claim properly dismissed**

Plaintiff was an apprentice employee of defendant hospital within the meaning of the Workers' Compensation Act, and his sole remedy for injuries received in a fall in the hospital is under the Act, where plaintiff was a student at Durham Technical Institute who worked at defendant hospital as a respiratory therapist; plaintiff was not paid monetarily but instead received the benefits of acquiring the practical skills required in accomplishing the tasks a respiratory therapist must perform; and in turn, defendant hospital received the

same benefit it would receive from one of its regular employees. N.C.G.S. § 97-10.1.

**Am Jur 2d, Workers' Compensation § 116.**

APPEAL by plaintiff from Order entered 1 April 1991 by *Judge Anthony M. Brannon* in DURHAM County Superior Court. Heard in the Court of Appeals 12 February 1992.

*Hayes Hofler & Associates, P.A., by R. Hayes Hofler and Laurel E. Solomon, for plaintiff appellant.*

*Young, Moore, Henderson & Alvis, P.A., by Walter E. Brock, Jr., and Carolyn Sprinthall Knaut, for defendant appellee.*

COZORT, Judge.

Plaintiff Charles Ryles brought a tort action against defendant Durham County Hospital Corporation, Inc., seeking to recover damages for an injury he sustained from a slip and fall at Durham County General Hospital ("Hospital"). Defendant averred in its answer that plaintiff was injured while working at the hospital as part of an on-the-job training program through Durham Technical Institute. Defendant claimed the plaintiff's action was barred by the exclusive remedy provisions of N.C. Gen. Stat. § 97-10.1, the Workers' Compensation Act, and filed a motion to dismiss for lack of subject matter jurisdiction pursuant to N.C. Gen. Stat. § 1A-1, Rule 12(b)(1) and Rule 12(h)(3) (1990). During the course of the motion hearing, the trial judge converted the motion to dismiss into a motion for summary judgment. The trial court entered an order granting summary judgment for defendant. We affirm.

The pleadings, depositions, and other materials in the record demonstrate that plaintiff began studying respiratory therapy at Durham Technical Institute ("DTI") in September of 1986. The respiratory therapy training program at DTI was a two-year program divided into halves. The first year involved classroom work where students attended science courses and received laboratory instruction. The second year of the program included an apprenticeship at affiliated area hospitals such as defendant's hospital. The apprenticeship program was created by contractual agreement between DTI and the defendant in order to allow program participants to apply their classroom knowledge in a hospital setting. The DTI program required each apprentice to work eight-hour

shifts three days a week at the hospital. These shifts were the same length as regular employee shifts. The students spent the remaining two days of the week attending classroom lectures and learning advanced laboratory procedures at DTI. The apprentices achieved the skills of a regular respiratory therapist by observing and by then performing the procedures. A hospital therapist would demonstrate a procedure and then supervise the apprentice who would perform the same procedure on a patient. While at the hospital, participants in the program were expected to master the skills needed to become respiratory therapists, including oxygen delivery, aerosol therapy, patient assessments, incentive spirometry, patient evaluations, and patient intubation. Patients were billed by the hospital for the same amount regardless of whether procedures were performed by an apprentice or by a regularly employed respiratory therapist.

Program participants were not reimbursed for their work by the hospital. They were required to provide their own lab coats and to wear tags identifying themselves as students. The hospital did not provide reserved parking spaces for the participants; they parked in visitors' spaces. While at work, the apprentices were required to follow the rules and regulations required of all hospital employees and could be dismissed from the program for infractions. Program participants were not required, however, to attend safety meetings which were mandatory for permanent hospital employees. DTI's policy with respect to the respiratory therapy clinical program provided:

> If injured during clinical rotations at the clinical affiliate, you are advised to seek medical assistance or care at the affiliate's emergency room. The student is fully responsible and liable for ALL charges and fees resultant from the delivery of medical care. It is advised that the student maintain health and accident insurance coverage for protection. Durham Technical Institute and the clinical affiliates maintain no liability for injury of [sic] illness occurrring [sic] during clinical rotations.

When plaintiff arrived for his morning shift on 30 September 1987, he slipped in a puddle of water just inside the second level entrance of the hospital, fell down, and sustained physical injury. He brought a tort action against defendant to recover damages. Defendant filed a motion to dismiss plaintiff's claim for lack of

subject matter jurisdiction pursuant to N.C. Gen. Stat. § 1A-1, Rules 12(b)(1) and 12(h)(3). Defendant contended plaintiff's sole remedy existed pursuant to N.C. Gen. Stat. § 97-10.1 (1991) under the Workers' Compensation Act (the "Act"). The trial court agreed and granted summary judgment for defendant.

Although defendant's original motion was to dismiss, where matters outside the pleadings are before the court, a motion to dismiss may be treated as a motion for summary judgment. *Deans v. Layton,* 89 N.C. App. 358, 362, 366 S.E.2d 560, 563, *disc. review denied,* 322 N.C. 834, 371 S.E.2d 276 (1988). Our standard for reviewing a summary judgment motion is whether the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, demonstrate there is no genuine issue as to a material fact and that the moving party is entitled to judgment as a matter of law. N.C. Gen. Stat. § 1A-1, Rule 56(c) (1990); *Meadows v. Cigar Supply Co.,* 91 N.C. App. 404, 406, 371 S.E.2d 765, 766 (1988). "Every court necessarily has the inherent judicial power to inquire into, hear and determine questions of its own jurisdiction, whether of law or fact, the decision of which is necessary to determine the questions of its jurisdiction." *Lemmerman v. Williams Oil Co.,* 318 N.C. 577, 580, 350 S.E.2d 83, 86, *reh'g denied,* 318 N.C. 704, 351 S.E.2d 736 (1986).

According to N.C. Gen. Stat. § 97-2(2) (1991), an "employee" for purposes of the Act "means every person engaged in an employment under any appointment or contract of hire or apprenticeship, express or implied, oral or written." In the case below, the trial court found the plaintiff to be an "apprentice" of the defendant as a matter of law and as such, the plaintiff's sole civil remedy was through a workers' compensation claim. On two other occasions, this Court has upheld the dismissal of tort claims brought by plaintiffs who were found to be apprentices and thus within the scope of the Act. First, in *Wright v. Wilson Memorial Hosp.,* 30 N.C. App. 91, 226 S.E.2d 225, *disc. review denied,* 290 N.C. 668, 228 S.E.2d 459 (1976), this Court decided that as a matter of law, a participant in a laboratory assistantship program was acting as an "apprentice" undergoing on-the-job training and was considered an employee subject to the provisions of the Act. The facts in the present case bear a striking resemblance to those in *Wright.* In *Wright,* Holding Technical Institute, (now Wake Technical Institute) contracted with Wilson Memorial Hospital, Inc., to permit students to receive on-the-job training at the hospital.

RYLES v. DURHAM COUNTY HOSPITAL CORP.

[107 N.C. App. 455 (1992)]

The participants in the lab technician program worked 40 hours per week, received hands-on training, laundry privileges, and room and board. The lab technician students, as in the case at bar, did not receive salaries but were required to abide by hospital rules and regulations adopted for regular employees. *Id.* at 92, 226 S.E.2d at 226. In upholding the trial court's entry of summary judgment for the defendant hospital, the Court in *Wright* stated:

> The job status of apprentice medical-related personnel is highly problematic and usually must be determined not only on a case-by-case basis but also with special regard to relevant statutory provisions. Though possibly and seemingly incongruous, a lab technician trainee could be considered a student for some purposes and an employee for others. . . . [W]e are concerned with coverage under the Workmen's Compensation Act of trainees who learn primarily from work in a hospital affiliated with a technical school the practical and technical skills required for employment in their training specialty. We find these trainees not to be primarily students, but rather to be apprenticeship employees within the meaning of the Workmen's Compensation Act.

*Id.* at 93, 226 S.E.2d at 226-27.

> In forming its conclusion, the Court in *Wright* relied in part. on *Galligan v. St. Vincent's Hosp.*, 28 A.D.2d 592, 279 N.Y.S.2d 886 (1967). In *Galligan*, a lower New York court determined that a student nurse injured while on the job at defendant hospital was an apprentice for purposes of New York's Workers' Compensation Act. *Galligan*, 279 N.Y.S.2d at 889. The *Galligan* court found the student nurse had been

> rendering a service to the hospital for its pecuniary gain at the time of the accident, under circumstances that made her status similar to that of an apprentice. An apprentice renders services to a master in a trade for the purpose of learning the trade, receiving no remuneration outside of his board and lodging, although the master receives payment for the services rendered by the apprentice.

*Id.*

The facts in the present case are comparable to those in *Wright* and *Galligan*. No facts in the present case add a legally significant impact which would vary the result found in the above cases. As

in the other cases, the plaintiff was not paid monetarily, but instead received the benefits of acquiring the practical skills required in accomplishing the tasks a respiratory therapist must perform. In turn, the defendant's hospital received the same benefit it would receive from one of its regular employees. The trainees were expected to follow the same general rules and regulations governing regular employees. Placing emphasis on the fact that plaintiff had to wear a name tag designating him as a "student" or that he was forced to use "visitor" parking spaces does not lessen the primary focus of an apprenticeship, as contemplated by the Act. This focus is more importantly the mutual benefit derived by the parties from the apprenticeship relationship. This theory was more recently articulated in *Sutton v. Ward*, 92 N.C. App. 215, 374 S.E.2d 277 (1988). In *Sutton*, the Court held that the plaintiff, a participant in a federally funded CETA program, was an "apprentice" for purposes of the Act. The plaintiff was injured while riding on a county garbage truck. The *Sutton* Court made its determination that the plaintiff qualified as an employee for workers' compensation purposes because the plaintiff was under contract for hire which allowed the employer to exercise control over plaintiff while he worked, and because of the plaintiff's status as an apprentice. *Id.* at 217-18, 374 S.E.2d at 279-80. The Court acknowledged the dictionary definition of an apprentice as "one who is learning by practical experience," and emphasized the mutual benefits arising from the plaintiff's labor. *Id.* at 218, 374 S.E.2d at 280. Further, the Court explained that the "[p]laintiff received training to enable him to better compete in the job market." *Id.* The reasoning in *Sutton* bolsters the trial court's conclusion in the case at bar. Plaintiff stated in his deposition:

> [In the fourth quarter] we are basically doing a little more therapy ourselves but being proctored the whole time with somebody standing right over us watching us and also on Mondays and Fridays still taking our classes.
>
> * * * *
>
> Well, basically we were, as they say, "senior students" and we were allowed to do more. The hospitals were hiring us then. Like Durham County hired several of our classmates and Duke hired me to do general care and U.N.C. Chapel Hill hired a couple to work over there and do general care for them in OT rounds. We were more or less — we had gotten

through—we knew enough now that we could actually be performing in a hospital.

Therefore, we are of the opinion that while plaintiff may have been a student at DTI, when he entered the hospital to perform respiratory therapy, his status changed to apprentice, making him subject to the Workers' Compensation Act.

Plaintiff maintains that he was specifically not covered by the defendant's hospital workers' compensation policy and therefore has no other remedy than through a civil action. We find no evidence in the record indicating the truth of this allegation. The record does reflect that the program supervisor was unsure about the applicability of workers' compensation to the respiratory therapist program participants. Furthermore, even assuming plaintiff was excluded from coverage under the hospital's policy, the employer's lack of workers' compensation insurance does not bar an employee's remedy through workers' compensation. *Ashe v. Barnes*, 255 N.C. 310, 121 S.E.2d 549 (1961). An employer must pay benefits to its employees, whether the employer has the necessary insurance, is self-insured, or has no insurance at all. N.C. Gen. Stat. § 97-95 (1991). An employee not covered by a workers' compensation policy has recourse pursuant to statute:

> As to every employer subject to the provisions of this Article who shall fail or neglect to keep in effect a policy of insurance against compensation liability arising hereunder with some insurance carrier as provided in G.S. 97-93, or who shall fail to qualify as a self-insurer as provided in the Article, in addition to other penalties provided by this Article, such employer shall be liable in a civil action which may be instituted by the claimant for all such compensation as may be awarded by the Industrial Commission in a proceeding properly instituted before said Commission . . . .

*Id.* Once the award is rendered by the Industrial Commission, the employee may bring a civil action to enforce the award. *Ashe*, 255 N.C. at 315, 121 S.E.2d at 552.

In summary, the trial court lacked subject matter jurisdiction to hear this case and properly granted summary judgment for defendant. Plaintiff must pursue the appropriate remedy through a workers' compensation claim. The trial court's order of summary judgment for defendant is

Affirmed.

Judges EAGLES and ORR concur.