## A94A2784. BROWN v. WHO'S THREE, INC.

(457 SE2d 186)

BEASLEY, Chief Judge.

Brown journeyed to Atlanta on business. Before her arrival she asked the hotel at which she would be staying if it had a hair salon and was told it did. She had someone at the hotel arrange an appointment for a facial. After arrival, she found Who's Who Hair Salon listed in the hotel's brochure under "Special Services." (Who's Three conducted its hair salon business under the name Who's Who.)

When Brown arrived at the salon, which was located in a matching building connected to the hotel by a covered courtyard or corridor, she was led to a room with a reclining table. A facial esthetician, Linda Al-Ansari, was in the room and instructed Brown to lie on the table. Sometime after Brown did so the reclining portion of the table gave way and she was rendered unconscious and injured. She sued the unknown builder of the table on a theory of products liability, and she alleged that the hotel and salon were liable on theories of premises liability (OCGA § 51-3-1), lack of due care in inspecting and maintaining the table, negligent supervision of Al-Ansari, and imputed negligence for any negligent acts of Al-Ansari under the doctrines of agency, respondeat superior, and apparent agency. The court granted the salon's motion for summary judgment, specifically ruling that the undisputed facts precluded any liability under premises liability, negligent inspection and maintenance of the table, agency, respondeat superior, or apparent agency; the court did not expressly address the theory of negligent supervision. Brown asserts the evidence does not preclude the theories of liability rejected by the court.

1. She first contends that the salon is liable for any negligent acts of Al-Ansari by virtue of the relationship between the salon and Al-Ansari. She argues that Al-Ansari held only an "apprentice" license to practice facial esthetics, see OCGA § 43-10-14, and that this status rendered the salon liable for any negligent acts on the apprentice's part by operation of the doctrine of respondeat superior.

Although the term "apprentice" no longer holds some of its historical connotations, such as indentured service, see *Comas v. Reddish*, 35 Ga. 236 (1866), an apprentice has historically been considered to be a "species of servant[ ]." *Lewis v. Fisher*, 30 A 608, 609 (Md. 1894). The former Georgia statute providing for apprentices referred to the apprentice as a servant. Code Ann. § 66-207 (1966 Rev.). Over time, the use of the term has changed, see *City of St. Louis v. Bender*, 154 SW 88 (Mo. 1913); *Heget v. Christ Hosp.*, 58 A2d 615,

616 (N. J. Ct. of C. P. 1948), but the term continues to indicate a relationship of master and servant, and an "apprentice" is usually treated as an employee for purposes of workers' compensation. See OCGA § 34-9-1 (2); *Ryles v. Durham County Hosp. Corp.*, 420 SE2d 487, 489-490 (N. C. App. 1992).

More modern arrangements whereby a person performs work under contract while learning a trade or occupation without being indentured have been likened to an apprentice relationship. *City of St. Louis*, supra at 90-91; *Heget*, supra at 616. This is so even where the student is unremunerated. *Ryles*, supra. The similarity between traditional apprenticeship and on-the-job student learning, suggests that one working "under" a certified esthetician or master cosmetologist while learning the trade, as contemplated by OCGA § 43-10-14, whether labeled a student or an apprentice, should be considered a servant for the purposes of respondeat superior.

" '[T]he doctrine of *respondeat superior* . . . holds the master responsible for the negligent act of his servant, committed while the servant is acting within the general scope of his employment and engaged in his master's business.' [Cit.]" *Stapleton v. Stapleton*, 85 Ga. App. 728, 730 (70 SE2d 156) (1952). "The negligence of the master in such a case is entirely derivative from the servant's negligence. [Cits.]" Id. at 731. The complaint alleged that Al-Ansari was negligent in using a table she should have known was not capable of supporting a customer.[1] Having undertaken to perform facials using the table, Al-Ansari had the obligation to do so non-negligently. *Atlanta Center, Ltd. v. Cox*, 178 Ga. App. 184, 185 (341 SE2d 15) (1986). There is no dispute that Al-Ansari herself supplied the table at issue.

Brown asserts that the statute regulating cosmetologists, estheticians, and manicurists establishes the salon is liable by operation of respondeat superior. OCGA § 43-10-14 allows a person to learn the occupation of esthetics as a student or apprentice "under" a certified master cosmologist, certified esthetician, or certified instructor. The salon admits that Al-Ansari "had not obtained her full license from the State and was an 'apprentice' since 1987." It argues, however, that the statute does not control the relationship between the learner and teacher, and points out that "learning . . . under" is not defined.

" 'It is elementary that "(i)n all interpretations of statutes, the courts shall look diligently for the intention of the (legislature)."

---

[1] The salon contended below, and repeats the contention here, that the complaint should be dismissed for failure to comply with OCGA § 9-11-9.1 (a). That contention played no part in the decision below and the salon did not cross-appeal the court's failure to address it. It does not appear that the negligence alleged on the part of the apprentice constitutes "professional malpractice" as contemplated by OCGA § 9-11-9.1 (a). See *Harrell v. Lusk*, 263 Ga. 895, 896 (439 SE2d 896) (1994); *Lutz v. Foran*, 262 Ga. 819, 820 (2) (427 SE2d 248) (1993).

OCGA § 1-3-1.' [Cit.] The legislative intent is determined from a consideration of the entire statute." *Restina v. Crawford*, 205 Ga. App. 887, 888 (424 SE2d 79) (1992). Chapter 10 of Title 43, of which OCGA § 43-10-14 is a part, regulates cosmetologists, estheticians, manicurists, and beauty salons. Although the chapter contains no explicit statement of legislative intent, it is clear that its intent is to protect the health and safety of the general public from unqualified practitioners and unsanitary practices. It provides that the State Board of Cosmetology may establish and enforce sanitary requirements for salons; unsanitary salons are declared a public nuisance. OCGA § 43-10-6. Persons wishing to be registered as cosmetologists, estheticians, or manicurists must have at least a ninth grade education, be 17 years of age, "of good moral character," must complete a certain number of hours of specialized instruction, and pass a state examination. OCGA § 43-10-9 (a), (b) and (f). A student or apprentice must be 16 years of age and must be registered with the state board. OCGA § 43-10-14. The state board is authorized to prescribe the course of study for students in schools of cosmetology, esthetics, and nail care, and to require that an applicant for examination for state registration assure the board that the required courses and hours have been completed. OCGA § 43-10-13 (a). Practicing as a cosmetologist, esthetician, or manicurist without registration, or teaching or attempting to learn such occupation except as set forth in the chapter, is a misdemeanor. OCGA § 43-10-19 (a). Wilfully permitting an unlicensed person to learn such occupation can result in revocation of registration and a fine, as can any violation of a rule or regulation of the state board. OCGA § 43-10-15.

In sum, the chapter requires that salons be sanitary, that practitioners have a certain level of maturity and training, and that operations be subject to administrative regulation. Taken together, this shows the recognition that the human body is at risk when subjected to cosmetological practices and the intent to regulate the industry and its practitioners for the health and safety of the general public which uses it. The requirement of OCGA § 43-10-14 that a student or apprentice be "learning . . . under" a certificate holder or instructor must be construed in light of that purpose.

Apprenticeship by nature imposes upon the instructor a degree of control and supervision over the manner and method of the student's work. Under the statutory scheme, it is whatever degree is necessary to protect the public; the use of suitable equipment is one aspect of the work reached by that duty of control and supervision. It is not disputed that the salon, through its employee and owner, allowed Al-Ansari to work there with knowledge that she could only practice as an apprentice or student.

The usual test applied to determine if one is a "servant" for

purposes of respondeat superior is "whether the employer, under the contract, whether oral or written, has the right to direct the time, the manner, the methods, and the means of the execution of the work. . . . The test is not whether the employer did in fact control and direct the employee in the work, but it is whether the employer had that right under the employment contract.' . . . [Cits.]" *Hall v. Buck*, 206 Ga. App. 754, 758-759 (6) (426 SE2d 586) (1992). One who accepts responsibility for teaching an apprentice or student the trade of cosmetology or esthetics under OCGA § 43-10-14 may be liable for the student's negligence in performing the duties incident to the instructor/apprentice relationship. The fact that Al-Ansari received a percentage of the fees she generated for the salon does not diminish the duty.

The salon asserts that Al-Ansari was an independent contractor, placing her outside the doctrine of respondeat superior. See *Hall*, supra. OCGA § 43-10-14 does not require that the student/apprentice be an employee; no specific relationship is required and the student could be uncompensated.

"The original common law rule that an employer is not liable for the torts of an independent contractor is codified in Georgia in OCGA § 51-2-4 which provides: 'An employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer.' [Cit.] . . . 'With (respect) to the "independent business" requirement set forth in the code section, the test is essentially whether the contractor has a bona fide existence apart from the employer or functions instead as the employer's alter ego.' . . . [Cit.]" *Loudermilk Enterprises v. Hurtig*, 214 Ga. App. 746, 747 (449 SE2d 141) (1994). Under OCGA § 43-10-14, Al-Ansari could not have any such independent business existence as a matter of law; she was not a licensed esthetician and could only work while learning under a master cosmetologist or certified esthetician. The statute precludes, by public policy, the status of independent contractor for an apprentice.

Aside from the aspects of the relationship necessary to satisfy OCGA § 43-10-14, there is ample evidence that Al-Ansari was treated as an employee and not as an independent contractor. The salon not only had the right to control the " 'time, the manner, the methods, and the means of the execution of [the apprentice's] work,' " *Hall*, supra, but actually exerted such control by approving Al-Ansari's use of her self-provided table, after investigation of it, when she first began working there. An owner and employee of the salon, a holder of a master cosmetologist certificate and the person who satisfied the requirements of OCGA § 43-10-14 pertaining to Al-Ansari's apprenticeship, had her perform several facials on him to ensure that she did

"the manipulation during the facial correct (sic)" and observed "what products she[ used], her basic knowledge, whatever." This testimony demonstrates not only his acceptance of his role as instructor of an apprentice, but his right to oversee and control the methods and manner of her work as an esthetician, and his right to insist upon adherence to certain standards and methods. The salon again exhibited such control by telling the student she could not use the table after Brown's injury until it had been further investigated.

The salon contends that Al-Ansari signed a document which stated that she understood she was paid as an independent contractor and was responsible for her own tax payments. Such documentary labeling "is not determinative of the status of any such person and other factors may negate the label. [Cits.]" *Doctors Hosp. of Augusta v. Bonner*, 195 Ga. App. 152, 162 (6) (a) (392 SE2d 897) (1990). Here, the "other factors" already stated negate the documentary label. As to control of Al-Ansari's time of arrival and departure, " '[t]he test is not whether the employer did in fact control and direct the employee in the work, but it is whether the employer had that right under the employment contract.' . . . [Cits.]" *Hall*, supra at 759 (6). The salon clearly had the right to control such.

By virtue of the relationship between the parties imposed by OCGA § 43-10-14 and the salon's acceptance thereof, as well as the degree of control actually asserted by the salon, there was ample evidence to thwart a conclusion on summary judgment that the salon was not liable under respondeat superior for any negligent acts committed by Al-Ansari as apprentice and/or as employee.

2. Brown also asserts that there is evidence that Al-Ansari was an apparent agent of the salon so that her negligence should be imputed to it. This theory requires that Brown "present evidence that [the salon] represented or held out [Al-Ansari] as its apparent agent or servant and [that] justifiable reliance upon the representation led to the injury. [Cits.]" *Keefe v. Carpet &c. Cleaning by Houndstooth*, 213 Ga. App. 439, 440 (1) (444 SE2d 857) (1994). The theory depends not on the actual relationship but upon the reasonably perceived one.

The issue before us in this appeal does not include Brown's allegations that the salon was an apparent agent of the hotel, and that Al-Ansari was an apparent agent of the hotel. The hotel was not a party to the salon's motion for summary judgment, and the allegations of the hotel's liability were not affected by the court's order granting the salon's motion.

Brown's deposition prevents the establishment of the salon as the principal of an apparent agent here. She testified that she thought the salon was an operation of the hotel and that all who worked there were hotel employees. She formed the belief on the basis of the hotel's affirmative response to her question of whether it had a salon,

the fact that the salon was listed in the hotel's guest services brochure under "Special Services," the salon's location in a joined building and, after the incident, the inclusion of the salon's fee on her hotel bill. She stated that she relied upon the reputation of the hotel in deciding to go to the salon otherwise unknown to her, and that she would not have kept her appointment if the salon had not been listed in the hotel's guest services brochure. Brown points to no representation on the part of the salon as to its principalship, upon which she relied. Summary judgment to the salon on the issue of apparent agency was proper.

3. Brown also contends that the salon is liable for her injuries because it failed to exercise ordinary care to keep its premises safe for invitees by allowing Al-Ansari to bring and use there a defectively designed and manufactured facial table. OCGA § 51-3-1. This theory of recovery relates to the salon's own duty and is independent of any negligence on Al-Ansari's part.

The occupier of a business premises " 'has a duty to exercise ordinary care in keeping the premises safe. (Cits.) This includes "a duty to inspect the premises to discover possible dangerous conditions of which he does not know and to take reasonable precautions to protect the invitee from dangers which are foreseeable from the arrangement and use of the premises." (Cits.)' [Cit.]" *Strickland v. Howard*, 214 Ga. App. 307, 308 (1) (447 SE2d 637) (1994). The salon occupied the premises on which the incident occurred pursuant to a rental agreement. Although Al-Ansari introduced the table to the premises, the occupier's duty is nondelegable. *Towles v. Cox*, 181 Ga. App. 194, 196 (351 SE2d 718) (1986). An owner and employee of the salon testified that he had permitted Al-Ansari to use her own table instead of one of the salon's, after sitting in it himself, receiving a facial, investigating the manner in which it worked, and visually inspecting it. Another owner testified she had also sat on the table.

The salon argues that there is no evidence the table was defective and that the only way Brown's fall could have occurred was through misuse of the table by Al-Ansari. That is not the only inference supportable.

Brown produced evidence that the table was visibly deficient in that it had no spring-loaded safety mechanism on its supports and that this was a standard for such tables. She testified that she fell when "the table from the waist up let go." The fall happened after Brown had gotten on the table, a cape had been placed over her clothes, her hair had been adjusted to facilitate the facial, Al-Ansari had placed a music tape into a tape player, and Brown had closed her eyes. Given the amount of time that apparently passed while Brown was on the table after whatever preliminary adjustments Al-Ansari made to it, it is a reasonable inference that the fall was due to the

absence of a safety mechanism rather than to any negligent act of Al-Ansari.

"[I]n ruling on a motion for summary judgment, the opposing party should be given the benefit of all reasonable doubt, and the court should construe the evidence and all inferences and conclusions arising therefrom most favorably toward the party opposing the motion. [Cit.]" *Garmon v. Warehouse Groceries Food Center*, 207 Ga. App. 89, 91 (1) (427 SE2d 308) (1993). Whether the table was deficient and whether that deficiency caused Brown's injuries is for a jury's determination.

The salon also contends that the owner's inspection satisfied its duty to exercise ordinary care for the safety of invitees. However, "issues of diligence, negligence, and contributory negligence are issues for jury determination except in plain and indisputable cases. [Cit.]" *Strickland*, supra. We cannot conclude as a matter of law that the inspection related by the owners was of sufficient diligence to satisfy the salon's duty. One owner testified that he knew the table had been constructed by an individual who was not a normal supplier of salon equipment, and there was evidence that inspection by the salon would have revealed that this table lacked a safety mechanism.

The salon suggests that Brown should have exercised ordinary care for her own safety and have noticed any patent defect in the table. Putting aside the question whether Brown, as a customer instead of one in the business of operating a salon, should be expected to recognize the deficiency alleged, " ' " " 'an invitee is not obliged to inspect the premises to discover latent defects nor even to observe patent defects.' (Cit.) ' "Only in clear and palpable cases, where it appears that one recklessly tests an observed and clearly obvious peril, or voluntarily assumes a position of imminent danger, will he be barred from recovery as a matter of law. . . . (Cits.)" ' (Cit.)" [Cit.]' [Cit.]" *Parker v. Johnson*, 214 Ga. App. 875, 877 (449 SE2d 344) (1994). There is no evidence that the facial table placed on the premises was obviously perilous.

As to the salon's superior knowledge of any latent defect and its responsibility to discover it, the record clearly reflects that the salon owner knew that the table was not built by a standard manufacturer but by an individual he did not know, and that his customers would be reclining on the table. In such circumstances we are unable to say that " 'ordinary diligence did not as a matter of law, under the facts (as shown), require an inspection (sufficient to reveal the defect).' " *Lonard v. Cooper &c. Properties*, 214 Ga. App. 862, 865 (449 SE2d 348) (1994). The issue of ordinary care must also be resolved by a jury.

*Judgment affirmed in part and reversed in part. McMurray, P. J., Johnson and Blackburn, JJ., concur. Smith, J., concurs in the*

*judgment only. Birdsong, P. J., Pope, P. J., Andrews and Ruffin, JJ., dissent.*

ANDREWS, Judge, dissenting.

I respectfully dissent from Divisions 1 and 3.

With respect to Division 1, I disagree with the majority's conclusion that an apprentice has the same status as an employee. Generally, treating an apprentice as an employee will lead to illogical and unintended results.

Apart from the general rule that an apprentice is *not* an employee, in this case the facts established that Al-Ansari was an independent contractor. First, she had a written contract which designated her as an independent contractor. That document, which Al-Ansari signed on August 25, 1990, stated: "I, . . . understand that I am being paid as an independent contractor. Therefore, I also understand that I am responsible for my own self-employment taxes and federal and state income taxes."

Additionally, Al-Ansari provided her own materials for working, including the chair which underlies the incident in this case. Who's Three did not control the time Al-Ansari arrived or the time that she left. Additionally, Who's Three did not pay social security or medicare amounts for her. She was an independent contractor. See generally *Bartlett v. Northside Realty Assoc.*, 191 Ga. App. 10 (380 SE2d 744) (1989). Accordingly there was no error in the grant of summary judgment on this basis.

With respect to Division 3, I would again affirm the trial court's grant of summary judgment. The evidence regarding the chair was that the back was held in a prone position by a saw-toothed edge. Who's Three contends that the only possible negligence would be Al-Ansari's for not adequately securing the catch. If this was the case, this appears to be a case of Al-Ansari's active negligence and not one of premises liability. See generally *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994).

Nonetheless, assuming arguendo that the claim stated here is one for premises liability, the grant of summary judgment was proper. "The true ground of liability is the proprietor's superior knowledge of the perilous instrumentality and the danger therefrom to persons going upon the property. If the invitee knows of the condition or hazard, there is no duty on the part of the proprietor to warn the invitee and there is no liability for resulting injury because the invitee has as much knowledge as the proprietor does." (Citations, punctuation, and emphasis omitted.) *Huntley Jiffy Stores v. Grigsby*, 208 Ga. App. 634, 635 (431 SE2d 435) (1993). If the danger here was a patent one and the hazard was apparent, then Brown had a duty to avoid such hazard and exercise ordinary care for her own safety. *Winchester v. Sun*

*Valley-Atlanta Assoc.*, 206 Ga. App. 140, 142 (424 SE2d 85) (1992).

If, on the other hand, the danger here was a latent one, then in order for Brown to recover there must be evidence that Who's Three knew or, in the exercise of ordinary care, should have known, of the problem. "In other words, [Who's Three's] liability may be predicated on constructive as well as actual knowledge." *Lonard v. Cooper &c. Properties*, 214 Ga. App. 862 (449 SE2d 348) (1994). The evidence showed that Merrihew, one of the salon owners, inspected the chair when Al-Ansari brought it in and that he sat on the chair while a facial was performed. Merrihew stated that the chair appeared sound and sturdy. Another owner of the salon stated that she sat on the chair and that it appeared safe. There is no evidence that there had been any prior problems with the table.

"[W]here, as here, there was no actual knowledge of the alleged dangerous and unsafe condition, and there is nothing in the record to show or indicate the propriety or necessity of making an inspection to ascertain the possible or probable existence of any defect, such as that other people had . . . fallen [off the same table], ordinary diligence did not as a matter of law, under the facts as shown, require an inspection sufficient to reveal the defect where the defendant had no reason to think such an inspection was necessary." (Punctuation omitted.) *Lonard*, supra at 865. Who's Three had no superior knowledge of the alleged defect and, accordingly, the trial court's grant of summary judgment was proper.

I am authorized to state that Presiding Judge Birdsong, Presiding Judge Pope, and Judge Ruffin join in this dissent.

DECIDED MARCH 17, 1995 —
RECONSIDERATION DENIED MARCH 30, 1995 — 

*Kidd & Vaughan, David N. Schaeffer, Jeffrey B. Kent,* for appellant.

*Tittsworth, Grabbe & Spillers, John C. Grabbe IV, Shivers, Johnson & Wilson, Wayne C. Wilson,* for appellee.