### A95A0724. STYLES v. MOBIL OIL CORPORATION.
(459 SE2d 578)

RUFFIN, Judge.

Randolph Styles sued Mobil Oil Corporation ("Mobil") for injuries he received when he fell approximately 30 feet from an icy steel beam on the roof of a building he was helping to construct for Mobil. Styles was an employee of Williams Erection Company, a subcontractor on the project. Styles alleged that the general contractors were negligent per se for failing to provide safety nets for the men working on the steel frame of the building's roof as required by OSHA and the Associated General Contractors of America ("AGC"). Styles further alleged that Mobil ratified the negligent conduct and was therefore vicariously liable to him under OCGA § 51-2-5 (6). The trial court granted Mobil's motion for summary judgment, ruling that because Styles knew the frame was icy but nonetheless walked on it, he assumed the risk of his injury and his vicarious liability claim against Mobil therefore failed as a matter of law.

1. Styles contends the trial court erred in ruling that he assumed the risk of his injury and in granting summary judgment accordingly. We agree that a genuine issue of material fact remains as to whether Styles voluntarily and without coercion chose a perilous course of conduct.

In *Kitchens v. Winter Co. Builders*, 161 Ga. App. 701 (289 SE2d 807) (1982), we addressed an almost identical factual situation. Kitchens, a construction worker, fell from a slippery ladder and sued the general contractor alleging its violation of federal and industry safety standards was negligence per se. The contractor moved for summary judgment, contending that because Kitchens had repeatedly complained about the dangers of the ladder but continued to use it, he assumed the risk of his injury.

We reversed the grant of summary judgment to the contractor because the doctrine of assumption of the risk applies only when a person voluntarily pursues a dangerous course of conduct without coercion, and by the very nature of construction work, Kitchens' conduct was restricted by the coercion of his employment: "It goes without saying that all construction work is dangerous and if we applied

the doctrine of assumption of the risk, which the defendant desires the court to do here, there would be no construction work, as all employees would immediately be required to walk off the job or assume the risk of injury. . . . [I]t is for the jury to determine whether under the facts and circumstances and inferences drawn from the evidence that a situation is so dangerous that the person injured in continuing to work with full appreciation of the danger involved and without restriction of his freedom of choice by circumstances or coercion deliberately pursued an obviously perilous course of conduct. Any construction worker as a servant and employee has a certain amount of his freedom of choice restricted by the circumstances under which he works and the coercion of seeking to remain employed." Id. at 703.

In this case, the record shows that on the morning of the accident, Styles expressed his concern about the danger posed by the ice on the steel beams. After the meeting, co-workers who had already walked on the frame called down to Styles that the conditions were icy and that they were sliding everywhere. Styles testified that he discussed the fact that the steel was icy with his supervisor, and the supervisor replied, "I cannot tell you to go up there, but we'll get somebody who can[,]" which Styles understood as a threat to work or be terminated. Styles further testified that having worked with the subcontractor, it was his belief that if an employee "buck[s] the system, the system gets rid of you." He also testified that he was aware of instances where employees had been terminated for "not producing or being a little too safe." When asked why he did not tell his co-workers to come down when they complained about the icy conditions, Styles replied that the supervisor was within earshot and would have fired him. Finally, Styles testified that once he stepped from the ladder onto the frame and saw it was icy, he remained and walked around to ensure that the skylight being welded on the roof that day for which he was responsible was done correctly and to encourage his co-workers to come down.

Given this evidence, there is a genuine issue of material fact as to whether Styles' decision to walk on the beams was an exercise of his free choice unrestricted by coercion or intimidation regarding his employment. *Kitchens*, supra. Accordingly, the trial court erred in ruling that Styles assumed the risk of his injury.

2. Despite our determination that a jury question exists as to whether Styles assumed the risk of his injury, the grant of summary judgment was not erroneous if Styles' injury was not the result of Mobil's negligence. See *Lipham v. Federated Dept. Stores*, 208 Ga. App. 385 (1) (430 SE2d 590) (1993), rev'd on other grounds, 263 Ga. 865 (440 SE2d 193) (1994). (Question of assumption of risk does not arise unless there first exists an issue of fact as to defendant's liability.) Styles contends that the failure of the contractors to use safety nets

as required by OSHA and AGC was negligence per se and that an issue of fact exists as to whether Mobil ratified that conduct such that it is vicariously liable to him under OCGA § 51-2-5 (6). See *Cardin v. Telfair Acres of Lowndes County*, 195 Ga. App. 449 (2) (393 SE2d 731) (1990).

OCGA § 51-2-5 (6) provides that an employer is liable for the negligence of a contractor "[i]f the employer ratifies the unauthorized wrong of the independent contractor." We have held that such ratification of a wrongful act "may result from acceptance of the work on the theory that acceptance shifts the responsibility for maintaining the . . . defective condition to the employer. . . . Ordinarily, in order to ratify an act, one must have knowledge of the act." (Citations and punctuation omitted.) *Wilmock, Inc. v. French*, 185 Ga. App. 259, 261 (1) (363 SE2d 789) (1987).

Styles presented evidence that Mobil's contract mandated compliance with OSHA standards (29 CFR 1926) and the standards set forth in the AGC's accident prevention manual. Both require the use of safety nets in circumstances such as these and that the contractor's practice violated OSHA regulations. Further, Mobil does not deny on appeal that it ratified the contractors' failure to comply with the requirements but instead addresses this enumeration of error simply by stating again that Styles assumed the risk of his injury. Because of the aforementioned evidence, a material issue of fact exists as to whether Mobil ratified the allegedly unauthorized conduct of its contractors, and the grant of summary judgment to Mobil was error.

3. As noted, the trial court's order granting Mobil summary judgment was predicated on a finding that Styles' vicarious liability claim failed because he assumed the risk of his injury. To the extent the court's order is read as granting summary judgment on Mobil's argument that punitive damages were improper, that finding is likewise based on the court's determination that Styles' liability claim failed; with no liability, there can obviously be no award of damages. Because we reverse the court's finding that Mobil has no liability as a matter of law, the reversal is, necessarily, a reversal of the grant of summary judgment on punitive damages as well.

*Judgment reversed. Beasley, C. J., and Pope, P. J., concur.*

DECIDED JULY 5, 1995 —
RECONSIDERATION DENIED JULY 19, 1995.

*Phillips & Reid, Stephen G. Lowe, Kenneth T. Horton, Jr.,* for appellant.

*Chambers, Mabry, McClelland & Brooks, Jan P. Cohen, F. Scott Young*, for appellee.