A01A0047. FORD'S & GANTT COMPANY, INC. et al.
v. WALLACE.
(548 SE2d 31)

SMITH, Presiding Judge.

Appellee Norris W. Wallace III brought this action for breach of a lease agreement against appellants Ford's & Gantt Company, Inc. and its principal and guarantor, E. Van Williams. Shortly before trial, Wallace amended his complaint to seek expenses of litigation and attorney fees for bad faith and stubborn litigiousness. After a two-day trial, a jury found in favor of Wallace and awarded expenses of litigation. Ford's & Gantt and Williams's motion for new trial was denied, and they appeal. Appellants' three enumerations of error all concern an issue that they attempted to raise after the trial was under way. Finding no error in the trial court's decision not to allow an amendment or in its charges to the jury on this issue, we affirm.

Wallace owned a commercial property in Macon which he leased to Ford's & Gantt in 1995. Williams signed the lease as guarantor. In

July 1998, appellants moved to a new location and turned in the keys to Wallace's building. After sending a letter demanding the rent due under the lease and giving notice of his intent to seek attorney fees, Wallace brought this action. Appellants answered and denied liability, asserting as a separate defense that the parties had agreed to a release because Wallace wanted to sell the property.

The testimony in the trial was completed in a single day. Wallace testified that appellants were two to three months behind on their rent when he became aware that they were relocating their business. At that time, Wallace presented Williams with a proposed "addendum to lease" providing that the lease would be terminated as soon as Wallace could locate a new tenant. Williams never signed or returned this addendum; while Wallace contended that Williams ultimately told him "that his attorney had advised him not to sign it," Williams testified that "[i]t got put to the side," and he "really didn't read it." Williams contended that Wallace's re-leasing of the property after he had failed to pay rent for six months terminated the lease. He also denied that he was moving out of the premises; he claimed that Wallace came to him, told him he had a tenant that wanted either to rent or to purchase the property, and agreed to let him out of the lease. Wallace "absolutely" denied that he had released appellants from the agreement.

During opening statements, which were not recorded,[1] appellants raised the question of condemnation of a portion of the property by the City of Macon for a street widening project. Wallace objected to the introduction of this issue, and the trial court reserved its ruling. During appellants' cross-examination of Wallace, their counsel began to question Wallace regarding the condemnation and contended for the first time that Williams was entitled to an offset for some portion of the condemnation. Wallace again objected. The trial court responded, "I'll sustain the objection at this point. We may go into it off the record, and we'll talk some more about it, but at this point, I don't see the relevancy of that."

The condemnation was still not complete at the time of trial, and Williams acknowledged that the property had not been taken at the time appellants left the premises and that the only work that had been undertaken was the relocation of a telephone pole. Williams testified at trial that the relocation of the pole "created a lot of problems" for his business, even though he had testified on his deposition that it was "just a nuisance," that he may have lost customers, "but I have no way of telling that." Wallace did not recall Williams ever

---

[1] While opening statements were not recorded, the colloquy between counsel and the trial court on the issue of the condemnation was recorded.

speaking to him about the telephone pole. Appellants do not point to any evidence in the record that they notified Wallace regarding the pole.

After Wallace rested his case, the trial court discussed the condemnation claim at some length with counsel. During this discussion, the trial court asked counsel for appellants regarding the issue to be put to the jury, "It's just the question of whether or not there's an issue of a release, isn't it?" Counsel responded, "Yes, sir." When further asked if he had any requests to charge on the point, appellants' counsel stated that he was requesting a charge on oral modification of an agreement, adding, "We're not saying there was a rescission, but there was an oral agreement that the termination date of the lease would be changed."

On direct examination of Williams, his counsel asked him if he had received any credit for condemnation funds received by Wallace. Wallace objected to this line of questioning on the basis that he was not required to share any compensation with Williams and that Williams was entitled to pursue any damage to his leasehold interest with the condemnor. The trial court ruled that, in the absence of any agreement to share a payment for the condemnation, the issue was irrelevant: "[I]t's not a part of the pleadings, it's not a part of the issues that have been raised in this case. . . . Condemnation is something that's outside of those issues." After the close of evidence, the trial court revisited the issue and stated on the record that the pleadings contained nothing regarding condemnation, that it was too late to introduce a new issue "without some notice to the other side," and that in any event with the exception of moving one telephone pole the condemnation occurred after appellants vacated the premises.

On the following morning, appellants attempted to amend their answer to add a defense of condemnation. The trial court observed that the evidence had closed the previous day, that the only issue regarding the condemnation was the relocation of the telephone pole, and that appellants presented no evidence that any problem about the pole was ever communicated to Wallace. Concluding that appellants were obligated to inform Wallace if the property became untenable and had not done so, the trial court reiterated that release was the disputed issue in the case, that appellants would not be allowed to reopen the evidence, and that the jury would not be charged on the issue of the condemnation proceedings.

1. Appellants contend that the trial court erred in refusing to allow them to amend their complaint to add the condemnation claim. After the first day of trial, appellants rested their case. Appellants did not file their attempted amendment to assert the condemnation claim until the following day.

Appellants contend that OCGA § 9-11-15 allows them to file an amendment at any time, because it specifies that amendments may be made "before the entry of a pretrial order," OCGA § 9-11-15 (a), and no pretrial order was entered in this case. But this attempted reading of the Code section is without merit:

> [A]fter the time for a pre-trial conference has passed and neither the court nor the parties have insisted upon the entry of a pre-trial order and no such order is entered, pre-trial proceedings end with the commencement of the trial proper and the taking of evidence. The unfettered right to amend ceases and a party may amend his pleading only by leave of court or by the consent of the adverse party.

(Citations and punctuation omitted.) *Black v. Lowry*, 159 Ga. App. 57, 58 (1) (282 SE2d 700) (1981). Wallace repeatedly objected to introduction of evidence of the condemnation.

> [A] post-judgment amendment would clearly have been proper under OCGA § 9-11-15 (b) *if* the issue . . . had been tried "by express or implied consent of the parties." Here, however, there was no express or implied consent, but rather an express objection to the trial of an issue not raised by the pleadings. Under that circumstance, OCGA § 9-11-15 (b) did not operate to give vitality to appellee's post-judgment amendment to his pleadings. [Cit.]

(Emphasis in original.) *Preferred Risk Ins. Co. v. Boykin*, 174 Ga. App. 269, 275 (7) (329 SE2d 900) (1985).

We note the provision of OCGA § 9-11-15 (b) that even when an amendment is objected to, the trial court may allow the pleadings to be amended and "shall do so freely" if it assists the presentation of the merits of the action and the objecting party fails to show prejudice. But this is a matter wholly within the discretion of the trial court. "Not only is the right of amendment very broad, but so is the court's discretion in this regard, and its determination will not be disturbed absent abuse." (Citation and punctuation omitted.) *Kim v. McCullom*, 222 Ga. App. 439, 440 (2) (474 SE2d 654) (1996) (full concurrence in Division 2); *Southern Cellular Telecom v. Banks*, 208 Ga. App. 286, 289 (8) (431 SE2d 115) (1993). The trial court expressly found that the attempt to amend the answer to add the defense of condemnation came too late and was not supported by the evidence. This conclusion was not an abuse of discretion.

2. Appellants also claim as error the trial court's refusal to give their requested jury instruction number 5, contending that it concerns their alleged interest in the property by virtue of a lease. But appellants' request number 5 deals with mitigation of damages; the

charge with respect to a leasehold interest was submitted by Wallace. "[T]he request to charge in question was not submitted by the appellant but by the appellees. Consequently, this enumeration of error presents nothing for review. [Cits.]" *Pritchett v. Anding*, 177 Ga. App. 34, 35 (5) (338 SE2d 503) (1985). Moreover, appellants failed to record an exception to this instruction after the trial court's charge to the jury. "In a civil case, an exception or objection to a charge must be made after the jury is charged and before the verdict; an objection made at a charge conference before the charge is given does not preserve a charging issue for appellate review." (Citations omitted.) *Johnson v. Bruno's, Inc.*, 219 Ga. App. 164, 166 (4) (464 SE2d 259) (1995).

3. Finally, appellants contend the trial court erred in refusing to give their requested jury instruction number 6.[2] This request sought a charge that if a tenant is dissatisfied and offers to surrender the premises, and the landlord tacitly accepts the offer by taking possession or control of the premises in a manner "inconsistent with the tenant's right of occupation," the tenant is discharged, "and a cancellation or rescission of the contract is thus effected by agreement of the parties, express or implied."

But "[a] request to charge itself must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If *any portion* of the request is inapt or incorrect, denial of the request is proper." (Citations and punctuation omitted; emphasis in original.) *Mattox v. MARTA*, 200 Ga. App. 697, 699 (4) (409 SE2d 267) (1991). In this case, no evidence was presented that Williams or Ford's & Gantt ever notified Wallace of any dissatisfaction with the property. To the contrary, the evidence of discussions between the parties went entirely to Ford's & Gantt's alleged intention to relocate, and Wallace's offer of a written addendum to the lease which was never accepted. Accordingly, the charge was not adjusted to the evidence, and the trial court did not err by refusing to give it.

The trial court instructed the jury on the modification of a written contract by subsequent oral agreement, consideration, partial performance, and release by mutual agreement. When the trial court substantially covers the principles of law requested by a party, it does not err in refusing to charge the precise language requested. *Joiner v. Lane*, 235 Ga. App. 121, 122 (1) (b) (508 SE2d 203) (1998). Particularly in light of the statement by appellants' counsel that the alleged oral agreement was *not* a rescission, these instructions substantially informed the jury of those legal principles in appellants' request to charge that were pertinent and adjusted to the facts in evi-

---

[2] Appellants properly excepted to the refusal to give this charge.

dence, and the trial court did not err in refusing to give the charge in the exact language requested.

*Judgment affirmed. Barnes and Phipps, JJ., concur.*

DECIDED APRIL 18, 2001.

*Phillips & Phillips, Arthur L. Phillips*, for appellants.
*Talbot & Rowe, Thomas W. Talbot*, for appellee.