## A04A0811, A04A0812. COOPER TIRE & RUBBER COMPANY v. MERRITT; and vice versa.

(608 SE2d 714)

MIKELL, Judge.

D. K. Merritt, an employee of Georgia Electric Company ("Georgia Electric") who worked at Cooper Tire & Rubber Company's manufacturing plant ("Cooper Tire") pursuant to an independent contractor agreement between Cooper Tire and Georgia Electric, was injured when a transformer fell on his left arm. Merritt sued Cooper Tire, alleging that it was liable for failing to keep the premises safe and vicariously liable for Georgia Electric's failure to maintain its equipment as required by Occupational Safety and Health Administration ("OSHA") regulations. The jury awarded Merritt $90,000 for medical expenses; $150,000 for past lost wages; $250,000 for future lost wages; and $750,000 in general damages. In Case No. A04A0811, Cooper Tire appeals the trial court's denial of its motions for judgment notwithstanding the verdict, to amend judgment, and for new trial. For reasons that follow, we reverse.[1]

In reviewing the denial of both a motion for a directed verdict and a motion for j.n.o.v., this Court must construe the evidence in the light most favorable to the prevailing party and determine whether there is any evidence to support the jury's verdict.[2] Viewed in this light, the evidence shows that in August 1996, Merritt was employed by Georgia Electric as a millwright. Georgia Electric maintains a long-term independent contractor relationship with Cooper Tire; a Georgia Electric maintenance and construction crew has been present at Cooper Tire's Albany, Dougherty County plant since 1990, performing installation and maintenance on the plant's electric systems pursuant to a purchase order that is renewed annually. The purchase order provides, in pertinent part, that, "[i]n the performance of work under any Contract, the contractor agrees to comply with all applicable Federal, State, or local laws, rules, regulations, or ordinances. . . . [C]ontractor agrees to strictly comply with the OSHA Hazard Communications Regulations." The contract further provides that, "[Georgia Electric's] services to Cooper [Tire] will be in the form of an independent contractor."

Merritt was injured on August 25, 1996, while the construction crew was using two Georgia Electric forklifts to raise and install a new transformer. As Merritt crawled underneath the transformer to

---

[1] In Case No. A04A0812, Merritt challenges the trial court's rulings on two motions in limine filed by Cooper Tire. In light of our holding in Case No. A04A0811, we need not reach the merits of Merritt's cross-appeal.

[2] *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997).

remove wooden crating material, the parking brake of Georgia Electric's Caterpillar forklift failed and the forklift jumped backward, dropping the transformer. Merritt's left arm was crushed by the falling transformer.

With respect to the forklift in question, a Caterpillar T-125D, the following evidence was adduced at trial. Georgia Electric purchased the used forklift specifically for use at Cooper Tire's plant. The forklift was delivered to the plant on January 6, 1996. George Capps, a former employee of Georgia Electric's forklift maintenance crew, testified that he was not required to keep daily checklists on Georgia Electric's forklifts as required by OSHA,[3] but that he checked the brakes on the subject forklift when it first arrived at the plant. After that initial inspection, however, Capps never checked, fixed, or repaired the parking brake on the forklift. Cooper Tire did not monitor Georgia Electric's maintenance of its industrial trucks, including its forklifts, or verify whether Georgia Electric was in compliance with OSHA regulations. Gene Ritchie, Cooper Tire's plant engineer, testified that he never observed or requested copies of a daily checklist generated by Georgia Electric for the subject forklift from January 1996, until Merritt's injury. Ritchie confirmed that Cooper Tire routinely collects daily forklift checklists from its employees, and that a forklift without an emergency brake could be dangerous depending on its use. Merritt's evidence showed that the forklift did not have an operable emergency brake. According to a fact witness who inspected the subject forklift, the caliper was "contaminated with grease" and the general condition of the brake pad was "[b]orderline to bad." This witness further testified that after he repaired the forklift and tested it, the forklift did not move.

Merritt filed this action against Cooper Tire alleging a failure to exercise ordinary care to keep the premises safe as required by OCGA § 51-3-1 and vicarious liability for the negligence of Georgia Electric pursuant to OCGA § 51-2-5 (4).[4] Cooper Tire moved for summary judgment, arguing that Merritt's claims were not viable. The trial court denied the motion but certified its order for immediate review. This Court denied Cooper Tire's application for interlocutory review and the case was tried before a jury. At the close of Merritt's evidence, Cooper Tire moved for a directed verdict on both claims, which the trial court denied. As noted above, the jury returned a verdict in favor of Merritt and the trial court entered judgment in Merritt's favor for

---

[3] Under OSHA regulations, Georgia Electric was required to conduct daily examinations of all industrial trucks, including forklifts, and to remove from service any industrial truck not in a safe operating condition.

[4] Merritt also alleged a violation of OCGA § 51-2-5 (3), but he withdrew that claim during the trial.

$1,240,000. Cooper Tire then moved for j.n.o.v., a new trial, and to amend judgment, which the trial court denied. Cooper Tire appeals.

1. In two enumerations of error, Cooper Tire argues that the trial court erred in denying its motions for j.n.o.v., a new trial, and to amend judgment for three reasons: (1) Cooper Tire has no common law duty to safeguard Georgia Electric's employees; (2) the evidence does not support a claim under OCGA § 51-3-1 or § 51-2-5 (4); and (3) it is immune from tort liability under the exclusive remedy provisions of the Workers' Compensation Act, OCGA § 34-9-1 et seq. We agree with Cooper Tire that the evidence does not support a claim under OCGA § 51-3-1 or § 51-2-5 (4) and, therefore, reverse the trial court's judgment.

(a) Relying on *Murphy v. Blue Bird Body Co.*,[5] Cooper Tire argues that Merritt's claim under OCGA § 51-3-1 fails because it does not involve a defective condition in the premises. In *Murphy*, the plaintiff, an employee of an independent contractor, was injured on the defendant's premises while using the defendant's forklift. The trial court granted summary judgment to the defendant, and the plaintiff appealed, arguing that the defendant breached its duty to plaintiff to keep the premises safe. We rejected this argument, reasoning that (1) there was no evidence that the premises were unsafe, and (2) the forklift "was not a part of the premises or a fixture thereto."[6] In the case at bar, as in *Murphy*, the forklift was not a part of the premises. Moreover, premises liability cases cited by the dissent for the proposition that Cooper Tire owed Merritt a duty to inspect and maintain the forklift are inapposite. In *Johnson v. Clark*,[7] for example, a concrete safety pole that should have been bolted to the ground fell on a painting contractor's employee, and issues of fact existed as to the property owner's knowledge of the dangerous condition. In *Towles v. Cox*,[8] an employee of a dry cleaning store was injured when she opened the back door of the store and a jackhammer, which had been propped against the back wall by a plumber's employee, fell against her leg.

Salient facts distinguish *Johnson* and *Towles* from the case sub judice. First, the allegedly dangerous instrumentality, the forklift, was owned and operated by Merritt's employer, Georgia Electric, and not by Cooper Tire. Moreover, the evidence shows that it had a hidden defect. In *Towles*, the injury occurred because the jackhammer was

---

[5] 207 Ga. App. 853 (429 SE2d 530) (1993).
[6] Id. at 857 (3).
[7] 233 Ga. App. 508 (504 SE2d 536) (1998).
[8] 181 Ga. App. 194 (351 SE2d 718) (1986).

placed in an unexpected location, not because it malfunctioned or was negligently maintained.

Under OCGA § 51-3-1, an owner or occupier is liable to invitees for "failure to exercise ordinary care in keeping the premises . . . safe."[9] However, "a property owner is not an insurer of the safety of its invitees. The mere showing of the occurrence of an injury does not create a presumption of negligence."[10] Rather, the true basis of an owner's liability is the owner's superior knowledge of the defect or hazard.[11] In this case, Merritt presented no evidence that Cooper Tire had actual or constructive knowledge of a defect in the forklift.[12]

To agree with the dissent would change and expand the holding in *Towles* and would overrule by implication our decision in *Murphy*. Imposing premises liability on Cooper Tire in the case at bar would create a precedent requiring the owners or occupiers of land to maintain, and to inspect for hidden defects, all vehicles, and perhaps all tools, by whomever owned, which happen to be found on the premises. We are not willing to make such a drastic change to existing law.

(b) At trial, Merritt claimed that Cooper Tire was liable for Georgia Electric's violation of OSHA under OCGA § 51-2-5 (4). In a pretrial order, the trial court ruled that

> [t]he applicable OSHA regulations are not admissible for the purpose of establishing that [Cooper Tire] has a *direct* duty or standard of care to plaintiff either to maintain [or] service . . . Georgia Electric's forklifts or to safeguard against injuries resulting from improper or defective maintenance

---

[9] See *Robinson v. Kroger Co.*, 268 Ga. 735, 740 (1) (493 SE2d 403) (1997) ("[w]hile not an insurer of the invitee's safety, the owner/occupier is required to exercise ordinary care to protect the invitee from unreasonable risks of harm of which the owner/occupier has superior knowledge") (citation omitted); *Wimpey v. Otts*, 207 Ga. App. 40, 42 (427 SE2d 34) (1993) ("[a]n owner . . . is liable in damages to invitees for injuries caused by his . . . failure to exercise ordinary care in keeping the premises safe. . . . The true ground of premises liability is the landowner's superior knowledge of the perilous condition and the danger therefrom to persons coming upon the property; it is when the perilous condition is known to the owner and not known to the person injured that a recovery is permitted.") (citations omitted).

[10] (Citation omitted.) *Nicholson v. Pike Nurseries*, 229 Ga. App. 540-541 (1) (494 SE2d 214) (1997). See also *Haskins v. Piggly Wiggly Southern*, 230 Ga. App. 350, 351 (496 SE2d 471) (1998).

[11] *Wingo v. Harrison*, 268 Ga. App. 156, 159 (601 SE2d 507) (2004); *Hudson v. Santangelo*, 228 Ga. App. 768, 772 (2) (492 SE2d 673) (1997); *Apostol-Athanasiou v. White*, 176 Ga. App. 178, 179 (335 SE2d 442) (1985).

[12] See, e.g., *Herrin v. Peeches Neighborhood Grill & Bar*, 235 Ga. App. 528, 532 (1) (509 SE2d 103) (1998). The dissent's argument that constructive knowledge can be inferred because the maintenance departments of Cooper Tire and Georgia Electric were "right next to each other" is not persuasive.

because [Merritt] was not at the time of injury an "employee" of [Cooper Tire].

(Emphasis in original.) The trial court further ruled that

[Cooper Tire] is statutorily liable under OCGA § 51-2-5 (4) if . . . the evidence shows that . . . Georgia Electric was negligent and the wrongful act of its contractor is a violation of a duty imposed by statute. Therefore, the applicable OSHA regulations are relevant and admissible to establish what *Georgia Electric's* duty of care was to [Merritt]. If the evidence establishes a violation of that standard, the violation . . . [is] imputed to [Cooper Tire] under OCGA § 51-2-5 (4).

(Emphasis in original.) Cooper Tire contends that Merritt's claim under OCGA § 51-2-5 (4) fails because Cooper Tire did not have a statutory duty to maintain the forklift and/or to ensure Georgia Electric's proper maintenance of the forklift. Merritt contends that Cooper Tire is liable under OCGA § 51-2-5 (4) because his injury resulted from Georgia Electric's violation of OSHA. We agree with Cooper Tire.

As a general rule, an employer is not liable for the torts of its independent contractor.[13] Under an exception to this rule, however, "an employer is liable for the negligence of an independent contractor who is performing the employer's nondelegable statutory duty."[14] The exception applies only where a statutory duty of the employer has been breached. Georgia Electric had a statutory duty to comply with OSHA regulations concerning the forklift in question. However, neither the dissent nor the parties' briefs have cited us to any statutory or case authority requiring a factory owner, such as Cooper Tire, to assure that all contractors comply with OSHA regulations. As Merritt has failed to prove that Cooper Tire had a statutory duty to maintain Georgia Electric's forklifts and/or to ensure that Georgia Electric properly maintained its own equipment, the trial court erred

---

[13] OCGA § 51-2-4. See, e.g., *Neiman-Marcus Group v. Dufour*, 268 Ga. App. 104, 105 (1) (601 SE2d 375) (2004); *Brown v. Who's Three*, 217 Ga. App. 131, 134 (1) (457 SE2d 186) (1995); *Loudermilk Enterprises v. Hurtig*, 214 Ga. App. 746, 747 (449 SE2d 141) (1994) (physical precedent only).

[14] (Citation and punctuation omitted.) *Jacobs v. Thomson Oak Flooring*, 250 Ga. App. 56, 61 (5) (550 SE2d 465) (2001). See OCGA § 51-2-5 (4); *Dept. of Veterans Svcs. v. Robinson*, 244 Ga. App. 878, 880 (536 SE2d 617) (2000); *Perry v. Soil Remediation*, 221 Ga. App. 386, 388 (2) (471 SE2d 320) (1996); *Loudermilk*, supra at 749.

in entering judgment in favor of Merritt on this claim.[15]

The dissent argues that if Cooper Tire contractually agreed to maintain the forklift, the failure to perform said duty would trigger the exception to the rule that the employer is not held liable for the torts of an independent contractor, in this case Georgia Electric.[16] Pretermitting whether Merritt was on the maintenance crew or the construction crew, neither the contract governing the maintenance crew nor the contract governing the construction crew required Cooper Tire to maintain Georgia Electric's forklift. The contract governing the maintenance crew provides as follows:

> OWNER [(Cooper Tire)] shall ensure that all equipment supplied by OWNER or by third parties shall meet OSHA specifications at the time it is made available to CONTRACTOR [(Georgia Electric)]. CONTRACTOR agrees to ensure that the equipment meets OSHA specifications subsequent to the supply by OWNER.

Therefore, the responsibility had shifted to Georgia Electric to ensure that the equipment met OSHA requirements. The contract further provides: "The cost of maintaining and repairing equipment, including the cost of spare parts, which are to be supplied by OWNER or for equipment provided by third parties shall be for OWNER'S account." Thus, Cooper Tire would have borne the cost of any necessary repairs identified by Georgia Electric's inspection of the forklift.

The contract governing the construction crew is a purchase order which is silent concerning the furnishing and maintenance of equipment. The evidence in the record is that the forklift in question was neither supplied nor maintained by Cooper Tire. Neither Merritt nor the dissent has pointed to any contractual provision which required Cooper Tire to maintain the forklift that caused Merritt's injury.

The dissent argues that the "safety plan" established a standard of care and that Cooper Tire breached that standard by failing to force Georgia Electric to comply with the plan. The "safety plan," which was the subject of a motion in limine, was apparently the "regulations governing outside contractors," which were incorporated into both

---

[15] See *Loudermilk*, supra. Compare *Kroger Co. v. Strickland*, 248 Ga. App. 613, 615 (1) (a) (548 SE2d 375) (2001) (upholding verdict in favor of invitee "[a]s the duty imposed on owner/occupiers to 'exercise ordinary care in keeping the premises and approaches safe' is statutory, [plaintiff/employer] may be held liable for the negligence of the independent contractor hired to clean its floors if such negligence rendered the premises and approaches unsafe") (footnotes omitted); *Johnson v. Clark*, supra at 510 (reversing grant of summary judgment to owner on same grounds).

[16] See OCGA § 51-2-5 (3).

contracts. These regulations required the contractor, Georgia Electric, to strictly comply with OSHA regulations. The OSHA regulations required daily inspection of the brakes and a daily checklist confirming the inspection.

Assuming that the "safety plan" did establish a standard of care, we nonetheless find in the record no evidence of any contractual duty on the part of Cooper Tire to ensure that Georgia Electric complied with the "safety plan." The absence of such a contractual duty from the "safety plan" and from both contracts may have been the reason that Merritt expressly abandoned during the trial his cause of action based on the contractual duty exception to the rule that employers are not liable for the torts of their independent contractors. This claim cannot be resurrected on appeal. While we certainly sympathize with Merritt for his grievous injuries, the law dictates that his sole remedy lies in workers' compensation.

For these reasons, the trial court should have directed a verdict in favor of Cooper Tire and erred in denying its motion for j.n.o.v. Upon remand, the trial court is directed to enter a j.n.o.v. in favor of Cooper Tire.

2. The enumerations of error in Merritt's cross-appeal, Case No. A04A0812, are moot in view of our rulings in Case No. A04A0811.

*Judgment reversed and case remanded with direction in Case No. A04A0811. Case No. A04A0812 dismissed as moot. Blackburn, P. J., Andrews, P. J., Ruffin, P. J., Eldridge and Adams, JJ., concur. Barnes, J., dissents.*

BARNES, Judge, dissenting.

Because Merritt presented evidence to the jury that supported the material questions of fact, I respectfully dissent from the majority opinion.

Merritt submitted two theories of liability to the jury, premises liability under OCGA § 51-3-1, and general contractor liability under OCGA § 51-2-5 (4) for violating an express statutory duty. The jury found for Merritt on both claims, and Cooper Tire appealed the trial court's denial of its motions for directed verdict and new trial. Cooper Tire also enumerated other errors, including the trial court's denial of his motion for continuance.

Merritt cross-appealed the trial court's ruling that Cooper Tire's maintenance contract and employee safety manual were not admissible. That ruling meant that Merritt could not present its third theory of liability under OCGA § 51-2-5 (3), that Cooper Tire was liable for the subcontractor Georgia Electric's negligence because the wrongful act — failure to inspect the forklift — violated a duty expressly imposed on Cooper Tire by its contract with Georgia Electric, under which it was to supply and maintain equipment.

Finally, Merritt also cross-appealed the trial court's ruling excluding the indemnity agreement between Cooper Tire and Georgia Electric, arguing that the indemnity agreement explained why Cooper Tire "did absolutely nothing to monitor Georgia Electric's compliance with OSHA or other applicable federal regulations, and established the true relationship between Cooper Tire and Georgia Electric."

*Case No. A04A0811*

1. In reviewing the denial of a motion for a directed verdict and the denial of a motion for new trial on general grounds, we must determine whether any evidence supports the jury's verdict. *Ga. Power Co. v. Irvin*, 267 Ga. 760, 762 (1) (482 SE2d 362) (1997). We must construe the evidence in the light most favorable to the prevailing party to determine whether that party has proven the elements of his claims. Id.

2. In this case, Merritt's general contractor claim under OCGA § 51-2-5 (4) is valid if Cooper Tire has in some way violated a statutory duty, such as failing to exercise ordinary care to keep its premises safe or failing to follow OSHA rules.

Under OCGA § 51-2-4, "[a]n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer," although the contractor's employer owes the contractor's employees "the ubiquitous duty of not imperiling their lives by his own affirmative acts of negligence." (Citations omitted.) *United States v. Aretz*, 248 Ga. 19, 24 (280 SE2d 345) (1981).

Georgia has statutory exceptions to that broad exemption. Under OCGA § 51-2-5 (4), "An employer is liable for the negligence of a contractor . . . [i]f the wrongful act is the violation of a duty imposed by statute." The majority of a seven-judge panel has held that, "Because the owner or occupier's duties to keep the premises and approaches safe are statutory (OCGA § 51-3-1), those duties are non-delegable even though the owner has a contract for another party to provide [the electrical work]. OCGA § 51-2-5 (4)." (Citations and punctuation omitted.) *Johnson v. Clark*, 233 Ga. App. 508, 510 (504 SE2d 536) (1998).

Further, unless Cooper Tire had delivered full and complete possession of its plant to Georgia Electric, either temporarily or permanently, Cooper Tire owed a duty to Merritt, who was an invitee, to exercise ordinary care to keep its premises safe. *Towles v. Cox*, 181 Ga. App. 194, 195-196 (1) (351 SE2d 718) (1986). As we explained in *Towles*,

If the conduct of third persons is such as to cause any reasonable apprehension of danger to other customers or invitees because of such conduct, it is the duty of the proprietor to interfere to prevent probable injury; and a failure so to interfere, and consequent damage, will subject such proprietor to an action for damages for such negligent failure to prevent the injury. This duty of interference on the proprietor's part does not begin until the danger is apparent, or the circumstances are such as would put an ordinarily prudent man on notice of the probability of danger. The nondelegable duty to keep one's premises safe requires that the owner or occupier must use ordinary care to guard, cover, or protect the dangerous or defective portion of the premises.

(Citations, punctuation and emphasis omitted.) Id. at 197 (1).

"It is a question of fact whether full possession and control over a premises have been delivered by an owner to a contractor." (Footnote omitted.) *Bartlett v. Holder Constr. Co.*, 244 Ga. App. 397, 399 (535 SE2d 537) (2000). In this case, Cooper Tire's engineer was present while Georgia Electric employees were installing the equipment that fell on Merritt's arm. The forklift driver testified that the engineer directed the Georgia Electric employees where and how to place the equipment. Therefore,

it cannot be said that the independent contractor had possession and control of the premises to the exclusion of the owner such that the owner had no duty of care as an owner for the safety of invitees on the premises. Under the circumstances, whether the owner or the contractor or both were in control of the premises should be decided by the jury.

(Punctuation and footnote omitted.) *West v. Briggs & Stratton Corp.*, 244 Ga. App. 840, 846 (536 SE2d 828) (2000).

Further, not only did Cooper Tire have a duty under OCGA § 51-3-1 to inspect and discover the negligent acts of its employees or contractor, but under the Occupational Safety and Health Act of 1970, 29 USCS § 651 et seq., 84 Stat. 1593 ("OSHA"), Cooper Tire had a duty to inspect "Motor Vehicles" that are not used in sites open to public traffic for dangerous conditions. See 29 CFR § 1926.601 (b) (1), (14). *Johnson v. Clark*, 233 Ga. App. at 511-512. While Merritt was not an employee of Cooper Tire under 29 USCS § 654, so that negligence per se would apply, if Cooper Tire had actual or constructive knowledge (for purposes of OSHA) of the hazard, then the company also had knowledge for purposes of OCGA § 51-3-1. Id. at 512. Further, "it does

not matter who [failed to inspect the forklifts], because the knowledge of such acts, as well as the negligence, is imputed to [Cooper Tire]." Id.

Under the evidence presented to the jury, construed most favorably toward Merritt, *Ga. Power Co. v. Irvin*, 267 Ga. at 762, Cooper Tire's actual or constructive knowledge of the forklift's inoperable emergency or parking brake was superior to Merritt's knowledge. Merritt showed that the defendant ensured that its forklifts' operations were checked and documented daily as required by OSHA, using a specific forklift safety check form, while the forklifts that Georgia Electric's employees used were never checked by anyone. Further, the maintenance departments for Cooper Tire and Georgia Electric were right next to each other, strengthening the argument that Cooper Tire had constructive knowledge that Georgia Electric never maintained its machines. Finally, no evidence indicated that Merritt knew that the forklifts were supposed to be checked daily. Therefore, deferring to the jury on these questions of material disputed fact, we should affirm the verdict.

As to the premises liability claim, Cooper Tire argues that, because the injury involved a forklift, no premises liability exists under *Murphy v. Blue Bird Body Co.*, 207 Ga. App. 853 (429 SE2d 530) (1993). A three-judge panel, citing no case law in support of its conclusion, held in *Murphy* that the appellant had no premises liability claim because "[t]he forklift in question was not a part of the premises or a fixture thereto." Id. at 857 (3). That case, however, is distinguishable on its facts. The plaintiff in *Murphy* was standing on the raised forks of a forklift to reach a light bulb, instead of using the machine for a task it was designed to perform, such as lifting and moving heavy loads. In this case, Merritt was using the forklift for such a task.

Further, we have not held elsewhere that the instrumentality rendering the premises unsafe must be a part or a fixture of the premises. To the contrary, we have held, e.g., that a jury question exists whether a hotel may be responsible under a premises liability theory for a defective massage table in a salon located on hotel property. *Brown v. Who's Three*, 217 Ga. App. 131, 137 (3) (457 SE2d 186) (1995) (physical precedent only).[17]

Many other cases have found potential liability for conditions that are not literally part of the premises, including, for example, *McGinnis v. Admiral Moving & Storage Co.*, 223 Ga. App. 410 (477 SE2d 841) (1996) (company's "walk board" bridging gap between truck and loading dock fell with truck driver on it), and *Styles v. Mobil*

---

[17] Because only four of the nine-judge panel concurred fully in the decision, that case is physical precedent only.

*Oil Corp.*, 218 Ga. App. 48, 49-50 (2) (459 SE2d 578) (1995) (owner and general contractor failed to provide safety nets for subcontractor's employee working on building's roof frame). Accordingly, *Murphy v. Blue Bird Body Co.* does not require a different result.

3. Cooper Tire also complains that the trial court erred in refusing to give its requested jury charge no. 15, which provided,

> An employer may be liable for a wrongful act committed by an independent contractor if: (a) the contractor violated a duty imposed by express contract upon the employer; or (b) the contractor violated a non-delegable duty imposed by statute upon the employer; and (c) such breach of a statutory or contractual duty was the proximate cause of the injury sustained by the plaintiff.

"[A] request to charge itself must be correct, legal, apt, even perfect, and precisely adjusted to some principle involved in the case. If any portion of the request is inapt or incorrect, denial of the request is proper." (Citation, punctuation and emphasis omitted.) *Ford's & Gantt Co. v. Wallace*, 249 Ga. App. 273, 277 (3) (548 SE2d 31) (2001). Pretermitting whether including the word "non-delegable" gave the trial court sufficient reason to exclude the charge, the charge included a theory of liability not presented to the jury, the violation of a duty imposed by express contract. The trial court thus did not err in declining to give Cooper Tire's requested charge no. 15.

4. Cooper Tire contends that the trial court erred in giving a lost wages charge unsupported by the record, and by denying its motions to amend the judgment and for new trial. It argues that the evidence established that Merritt was still able to work, but chose not to, and thus that he was not entitled to any lost earnings. It further argues that Merritt's expert economist failed to distinguish between past and future lost earnings, but merely calculated that Merritt lost and will lose from $323,986 to $476,363 from the date he was laid off from Georgia Electric, about two years after the accident, to the date he would have retired.

"Lost earnings can be recovered if the proof is reasonably certain. The jury must be able to calculate the amount of the loss with such reasonable degree of certainty since, of course, the question of damages cannot be left to guesswork." (Citations omitted.) *Douglas v. Rinker*, 134 Ga. App. 949, 950 (216 SE2d 629) (1975).

> Based on evidence of what the plaintiff was able to do before and after the injury, the nature and percentage of permanent impairment, and the value of the services before the injury, a jury may make an award as compensation for

diminished earning capacity, whether or not the evidence establishes with any exactitude the lost future earnings.

(Citations and punctuation omitted.) *Ga. Farmers' Market Auth. v. Dabbs*, 150 Ga. App. 15, 19 (8) (256 SE2d 613) (1979). Merritt testified that he had worked as a millwright his entire life, a job that required two strong arms, and that he was only able to work after his injury because Georgia Electric provided him with a helper. After it laid him off, he was unable to find millwright work elsewhere, because other employers were unwilling to provide him with a helper. Merritt's treating physician testified that Merritt sustained a 75 percent permanent partial impairment of his left upper extremity following a series of surgeries, and could not return to an occupation that required him to use both upper extremities. The economist testified that he computed the range of Merritt's lost wages by using his pre-injury salary both at 40 hours per week and working overtime as he did in 1996. He testified about the weekly salaries he used in his calculations, Merritt's work-life expectancy, and adjustments for future increased costs of living and discounted present-day cash values.

Based on this evidence and deferring to the jury on these questions of material disputed fact, the trial court did not err in charging the jury regarding past and future lost wages and denying Cooper Tire's motions to amend the judgment and for new trial.

5. Cooper Tire also argues that it was prejudiced because it did not anticipate the trial court's ruling four days before trial on its motion in limine, in which it sought to exclude evidence of OSHA regulations. Because Cooper Tire had not anticipated that the trial court might conclude that it could be liable under OCGA § 51-2-5 (4) for Georgia Electric's OSHA violations, it stated to the court that it had not prepared for such a defense, although the parties' pre-trial order listed that statute as an issue.

Whether to grant or deny a motion for continuance is a matter within the trial court's discretion, which we will not reverse unless the court abused that discretion. *Purvis v. Ballantine*, 226 Ga. App. 246, 247 (1) (a) (487 SE2d 14) (1997). Based on the record before us, the trial court did not abuse its discretion in denying Cooper Tire's motion for continuance.

## Case No. A04A0812

6. While none of Cooper Tire's enumerations are persuasive, Merritt raises an issue in his cross-appeal that would be sufficient to reverse and remand this case. He contends that the trial court erred in granting Cooper Tire's motion in limine to exclude evidence of the

maintenance contract between Cooper Tire and Georgia Electric, and Cooper Tire's safety plan, which was incorporated into that contract. The contract specified that Cooper Tire would furnish necessary equipment to Georgia Electric, unless it required Georgia Electric to provide equipment, and Cooper Tire would be responsible for the costs of operation and use.

The contract further provided that all equipment would be maintained in compliance with OSHA regulations. The safety plan incorporated OSHA regulations regarding powered industrial trucks, and required the completion of a daily forklift checklist which included brake inspections before putting the machine into service. A defective safety brake such as the one that caused Merritt's injury would have been detected if anyone had complied with the applicable OSHA regulations.

> The grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care, because it seeks to preclude by pre-trial evidentiary ruling on the admission of evidence without the trial court having any evidentiary foundation for the ruling in the context of the trial. Where the exclusion of evidence is required as a matter of law, the trial court does not abuse its discretion in granting a motion in limine. Thus, by its very nature, the grant of a motion in limine excluding evidence suggests that there is no circumstance under which the evidence under scrutiny is likely to be admissible at trial. In light of that absolute, the grant of a motion in limine excluding evidence is a judicial power which must be exercised with great care.

(Citations and punctuation omitted.) *Hand v. Pettitt*, 258 Ga. App. 170, 171 (1) (a) (573 SE2d 421) (2002).

Georgia Electric was performing two tasks at Cooper Tire's plant: long-term maintenance and new construction. Cooper Tire argued that these two tasks were separate and independent, and that the new construction purchase order was unrelated to the maintenance contract and safety plan. It contended that the contract and safety plan applied to Georgia Electric's maintenance crew but not to its construction crew. Merritt argued that the evidence would show that crews worked on both tasks side by side, and that as a practical matter, everyone was expected to comply with the safety plan. But Cooper Tire's representative on plant safety issues confirmed that the company took no affirmative steps to monitor safety plan compliance; did not hold safety meetings with outside contractors; did not collect daily forklift checklists from its contractors; and had no procedure to detect violations of OSHA or of its safety plan.

"[Privately established] rules are admissible as illustrative of negligence, but the violation of such a rule is not negligence in and of itself." (Citations omitted.) *Southern R. Co. v. Allen*, 88 Ga. App. 435, 450 (12) (77 SE2d 277) (1953).

> An action predicated upon ordinary negligence involves application of such principles as "ordinary care," and "acts of an ordinary prudent man," which are variable terms, according to the situation upon which they operate. It has therefore been found by courts to be justifiable to leave all such questions for determination by the jury. Hence, any evidence as would conceivably be illustrative of what might constitute the exercise of ordinary care in the specific situation at issue, including private guidelines, is relevant and admissible for whatever consideration in that regard the jury wishes to give to it.

(Citations and punctuation omitted.) *Luckie v. Piggly-Wiggly Southern*, 173 Ga. App. 177, 178 (1) (325 SE2d 844) (1984) (physical precedent only).

The safety plan that was excluded established Cooper Tire's recognized standard of care, which the jury could have considered in determining whether the defendant breached the standard of care by failing to ascertain Georgia Electric's compliance with the plan. This evidence should not have been excluded.

Merritt further argues that Georgia Electric's contract with Cooper Tire should have been admitted, because it would have proved that Cooper Tire was liable for his damages under OCGA § 51-2-5 (3). That subsection provides that an employer is liable for its contractor's negligence "[i]f the wrongful act is the violation of a duty imposed by express contract upon the employer." The rule is that if "a person contracts to do a certain thing, he cannot evade liability by employing another to do that which he has agreed to perform." (Citations and punctuation omitted.) *Crispens Enterprise v. Halstead*, 209 Ga. App. 133, 134 (2) (433 SE2d 353) (1993). Under the contract in this case, Cooper Tire was responsible for supplying and maintaining Georgia Electric's equipment, and therefore evidence about this contract should have been admissible at trial.

While Cooper Tire argues that Merritt withdrew this claim at trial and thus waived his right to raise it on appeal, when Cooper Tire moved for a directed verdict on the motion, Merritt had been denied the ability to present any evidence that supported his claim. Thus the trial court would have granted a directed verdict against him, and his withdrawal of the claim at that point made no difference.

30

7. Merritt's assertion that the trial court erred in granting Cooper Tire's motion in limine and excluding evidence of assurance and indemnity is not persuasive.

For these reasons, I respectfully dissent from the majority opinion.

DECIDED DECEMBER 1, 2004 —
RECONSIDERATION DENIED DECEMBER 15, 2004 — 

*Freeman, Mathis & Gary, Philip W. Savrin, Sun S. Choy*, for appellant.

*Divine, Finney & Dorough, Kermit S. Dorough, Jr., Bowles & Bowles, Jesse G. Bowles*, for appellee.