A06A2199. WATKINS et al. v. FIRST SOUTH UTILITY CONSTRUCTION, INC. et al.

(644 SE2d 449)

BERNES, Judge.

In this personal injury action, plaintiffs Beverly Bailey Watkins and Stephen Avery Watkins appeal from the trial court's orders granting summary judgment to defendants First South Utility Construction, Inc. and C & S Cable Construction, Inc. and denying plaintiffs' motion for partial summary judgment against C & S. We affirm for the reasons set forth below.[1]

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant [or denial] of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Citation omitted.) *Murray v. Fitzgerald Convenient Centers*, 239 Ga. App. 799 (521 SE2d 915) (1999).

So viewed, the evidence shows that on July 21, 2000 the Georgia Department of Transportation ("DOT") granted BellSouth Telecommunications, Inc.'s application for a utility encroachment permit for laying cable within the public right-of-way of Highway 142 in Jasper County. In turn, BellSouth contracted with First South to perform associated utility construction, and First South retained C & S as a subcontractor to perform a portion of First South's work. C & S then hired Pittman Company to trim trees on the side of Highway 142 in preparation for the laying of cable. There is no evidence showing that Pittman Company performed its work subject to the immediate direction and control of either First South or C & S.

On the afternoon of August 22, 2000, Pittman Company employee Joshua G. Pittman was driving a tractor that was towing a device known as a "bush hog" to clear smaller trees from the right-of-way. That same afternoon, Beverly Watkins was driving home

---

[1] First South's motion to dismiss the plaintiffs' appeal on account of a late-filed appellate brief is denied.

from work. After Watkins crested a hill on Highway 142, she encountered Pittman's tractor, which was partially on and partially off the roadway. Watkins tried to avoid the tractor by hitting her brakes and then steering to the right. However, her left front tire ran over the top of the bush hog, and Watkins was injured when her car crashed. Pittman conceded that the tractor did not have running lights or turn signals and that the bush hog did not have lights, a flag, or other warning devices.

The plaintiffs sued First South, C & S, and Pittman Company for personal injury and loss of consortium, contending that Joshua Pittman's negligent operation of the tractor caused Beverly Watkins's injuries and that all of the defendants were jointly and severally liable.[2] First South moved for summary judgment on the issues of vicarious liability and loss of consortium, asserting that it was not liable for Joshua Pittman's alleged negligence because Pittman Company was an independent contractor. The trial court granted First South's motion.

C & S also moved for summary judgment, arguing that it was not responsible for any torts committed by the independent contractor Pittman Company. The plaintiffs moved for partial summary judgment on the issue of C & S's breach of duty. The trial court granted summary judgment to C & S on all theories of recovery and denied the plaintiffs' motion for partial summary judgment.

On appeal, the plaintiffs argue that First South and C & S were directly liable for Beverly Watkins's injuries because they maintained a nondelegable contractual, statutory, and regulatory duty to ensure the proper use of traffic control devices in the utility work along Highway 142. However, since the plaintiffs' claims are based on First South's and C & S's alleged nondelegable duty, the claims are properly construed as based on vicarious liability. "The cases of nondelegable duty hold the employer liable for the negligence of the independent contractor, although he has himself done everything that could reasonably be required of him. They are thus cases of vicarious liability." (Citation and punctuation omitted.) *Gaffney v. EQK Realty Investors*, 213 Ga. App. 653, 653-654 (445 SE2d 771) (1994). Nevertheless, regardless of whether the alleged liability is direct or vicarious, the plaintiffs' claims are contingent upon showing that an express contract, statute, or regulation imposed a nondelegable duty on First South and C & S to ensure that required safety devices were in place at the time and place of the permitted utility construction. The plaintiffs have failed to establish the existence of such a duty.

---

[2] Following a settlement, Pittman Company was dismissed as a defendant.

"Generally, employers are not responsible for torts committed by independent contractors. OCGA § 51-2-4." *PYA/Monarch v. Higley*, 219 Ga. App. 199, 201 (2) (464 SE2d 630) (1995). There is an exception to this general rule "where the wrongful act violates a duty imposed by an express contract upon the employer." (Footnote omitted.) *Nulite Indus. Co. v. Horne*, 252 Ga. App. 378, 379-380 (2) (556 SE2d 255) (2001). See OCGA § 51-2-5 (3). Here, the only contract relied upon by the plaintiffs is an "Independent Contractor Agreement" between First South and C & S. In this agreement, C & S agreed to comply with all "OSHA, state and local" safety regulations. But, our "cases which have construed the statutory exception in the Georgia Code above cited have emphasized the word 'express,' " and the language in the agreement here is too general to fall within the exception. (Citations and punctuation omitted.) *Fields v. B & B Pipeline Co.*, 147 Ga. App. 875, 876 (250 SE2d 582) (1978) (contractual duty that " 'grantee . . . shall exercise reasonable diligence in doing the necessary work . . . so as to avoid damaging the property' " was insufficient to bring the case within the statutory exception). See also *Faubion v. Piedmont Engineering &c. Corp.*, 178 Ga. App. 256, 258-260 (2) (342 SE2d 718) (1986) (contractual duty "to see that the work to repair the warehouse was done skillfully, carefully, diligently and in a workmanlike manner" was insufficient to bring the case within the exception); *Southern Mills v. Newton*, 91 Ga. App. 738, 742 (2) (a) (87 SE2d 109) (1955) (contract language requiring defendant to perform work "in accordance with the laws of the State of Georgia" was insufficient to bring the case within the exception). It follows that the plaintiffs have failed to establish any issue of material fact as to whether First South and C & S could be held liable for the negligence of the independent contractor Pittman Company under the statutory exception for express contracts.

There is another exception to the general rule that an employee is not responsible for an independent contractor's torts: an employer is liable for the negligence of an independent contractor who is performing a nondelegable statutory or regulatory duty imposed upon the employer. See OCGA § 51-2-5 (4); *Cooper Tire &c. Co. v. Merritt*, 271 Ga. App. 16, 20 (1) (b) (608 SE2d 714) (2004); *Perry v. Soil Remediation*, 221 Ga. App. 386, 388-390 (2) (471 SE2d 320) (1996). In this respect, the plaintiffs contend that First South and C & S had a nondelegable statutory and regulatory duty to have in place adequate traffic control devices at the time and place of the permitted utility construction.

By statute, the DOT is authorized to regulate the installation and construction of cable and other utilities "in, on, along, over, or under any part of the state highway system." OCGA § 32-6-174. The

DOT has exercised this authority by enacting its Utility Accommodation Policy and Standards (1988) ("UAPS"). The UAPS requires utility owners to apply for and obtain a permit before installing a utility on a state highway and to abide by the permit's terms. See UAPS, Ch. 3.1, at 23.

Consistent with this requirement, BellSouth obtained a DOT permit to install the cable alongside Highway 142, and BellSouth expressly agreed to comply with the UAPS. The permit provides as part of its general provisions that in the cable's initial installation and construction, "the Permittee shall, at all times, maintain flagmen, signs, lights, flares, barricades, and other safety devices in accordance with the Department's Manual on Uniform Traffic Control Devices [('MUTCD')]." Additionally, at the top of the permit there is a proviso that "traffic control [shall be] in accordance with the GUCC[3] Manual on traffic control procedures for utilities." Neither First South nor C & S, however, is referenced in the permit.

The plaintiffs nonetheless contend that the UAPS obligates utility contractors such as First South and C & S to comply by the terms of the permit and that such duties could not be delegated. To advance this argument, the plaintiffs point to the UAPS definition of "Applicant" as "[t]he corporation, company, firm, business, government agency, partnership, individual or individuals named in the utility permit *or the agents, employees, representatives or contractors thereof.*" (Emphasis supplied.) UAPS, Ch. 1, at 2. Based on this language, the plaintiffs contend that contractors such as First South and C & S are therefore included in the definition of applicant and must comply with UAPS provisions associated with an applicant, including the obligation to abide by the terms of the permit. UAPS, Ch. 3.1 (B), at 24.

We cannot conclude that the reference to a named permittee's "contractors" within the definition of applicant is intended to impose on such contractors the obligations and duties of the applicant for purposes of the UAPS. This is made clear by the fact that the regulations contain a separate provision entitled "Work by Utility Contractors" which provides that "contractor[s] shall agree in writing prior to beginning work that such work will be performed in accordance with the Department's current Utility Accommodation Standards and Specifications." UAPS, Ch. 3.4 (F), at 27. If the regulations intended for there to be no distinction between applicants and their utility contractors, there would be no need for this provision requiring utility contractors to enter into separate contracts to abide by the regulatory provisions. The provision would be unnecessary, since

---

[3] GUCC refers to the Georgia Utilities Coordinating Committee.

applicants are bound by the regulations without a separate contract. See id., Ch. 3.1 (B), at 24. Notably, there is no evidence in the record that First South or C & S ever executed separate written contracts to abide by the UAPS.

We also note that the regulations impose obligations on the applicant which are inconsistent with obligations logically associated with a contractor, including an obligation to pay for the entire cost of the utility installation. UAPS, Ch. 3.3 (B), at 25. Furthermore, the purpose of the regulations, as expressed by the DOT, is to provide "an administrative means for the Department . . . to hold the *utility owner* responsible for such authorized work." (Emphasis supplied.) Id., Ch. 2.1 (B), at 10.

In light of the foregoing, we conclude that a contractor, merely by agreeing to work on an installation authorized by a utility encroachment permit, is not assuming the duties and obligations of the applicant for purposes of the UAPS. Rather, the general rules as to the liability of an employer for the torts of an independent contractor apply: "There is no peculiarity in contracts for the performance by independent contractors of work upon a highway which distinguishes them from ordinary contracts, and the general rule of the immunity of the employer in such cases applies with equal force as to other work." (Citation and punctuation omitted.) *Bell South Telecommunications v. Widner*, 229 Ga. App. 634, 637 (3) (495 SE2d 52) (1997).

Accordingly, as the uncontroverted evidence established that Pittman Company was an independent contractor, and since no exception to the general rule of immunity of the employer in such circumstances has been shown, the trial court did not err in granting summary judgment to First South and C & S or in denying the plaintiffs' motion for partial summary judgment.[4] See *Widner v. Brookins, Inc.*, 236 Ga. App. 563, 564-565 (2) (512 SE2d 405) (1999) (employer-contractor held not liable for subcontractor's work in preparing ground for telephone cable installation, given absence of evidence showing exception to general rule that employer is not liable for torts of an independent contractor).

*Judgment affirmed. Barnes, C. J., and Andrews, P. J., concur.*

DECIDED MARCH 27, 2007.

*Irwin M. Ellerin*, for appellants.

---

[4] We need not address the plaintiffs' claims as they pertain to the MUTCD and GUCC, as these arguments are premised upon a showing that First South and C & S were applicants and bound by the permit requirements for purposes of the UAPS.

*Hicks, Casey & Foster, William T. Casey, Jr., Adrian Britt*, for appellees.